**FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

Electronically Filed
Intermediate Court of Appeals
CAAP-12-0001040
29-SEP-2016
11:22 AM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

NO. CAAP-12-0001040
STATE OF HAWAI'I, Plaintiff-Appellee, v.
SEMISI NELSON, Defendant-Appellee, and
INTERNATIONAL FIDELITY INSURANCE COMPANY,
Real Party in Interest/Appellant.
(CR. No. 05-1-2446)

AND

NO. CAAP-12-0001041
STATE OF HAWAI'I, Plaintiff-Appellee, v.
KAREN TERUYA, Defendant-Appellee, and
INTERNATIONAL FIDELITY INSURANCE COMPANY,
Real Party in Interest/Appellant.
(CR. No. 02-1-1718)

AND

NO. CAAP-12-0001042
STATE OF HAWAI'I, Plaintiff-Appellee, v.
CONRADO CABIGON, JR., Defendant-Appellee, and
INTERNATIONAL FIDELITY INSURANCE COMPANY,
Real Party in Interest/Appellant.
(CR. No. 08-1-1192)

AND

NO. CAAP-12-0001043
STATE OF HAWAI'I, Plaintiff-Appellee, v.
STEVEN D. FERRARIS, Defendant-Appellee, and
INTERNATIONAL FIDELITY INSURANCE COMPANY,
Real Party in Interest/Appellant.
(CR. No. 11-1-0306)

AND

NO. CAAP-12-0001044
STATE OF HAWAI'I, Plaintiff-Appellee, v.
DAVID K. BERRY, Defendant-Appellee, and
INTERNATIONAL FIDELITY INSURANCE COMPANY,
Real Party in Interest/Appellant.
(CR. No. 10-1-1289)

AND

NO. CAAP-12-0001045
STATE OF HAWAI'I, Plaintiff-Appellee, v.
JUSTIN NAKAMURA, Defendant-Appellee, and
INTERNATIONAL FIDELITY INSURANCE COMPANY,
Real Party in Interest/Appellant.
(CR. No. 09-1-1364)

AND

NO. CAAP-12-0001046
STATE OF HAWAI'I, Plaintiff-Appellee, v.
CEDRO MUNA, Defendant-Appellee, and
INTERNATIONAL FIDELITY INSURANCE COMPANY,
Real Party in Interest/Appellant.
(CR. No. 09-1-0616)

AND

NO. CAAP-12-0001047
STATE OF HAWAI'I, Plaintiff-Appellee, v.
JOHN PAUL LUNA, Defendant-Appellee, and
INTERNATIONAL FIDELITY INSURANCE COMPANY,
Real Party in Interest/Appellant.
(CR. No. 10-1-0621)

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT

SEPTEMBER 29, 2016

FUJISE, PRESIDING JUDGE, REIFURTH, and GINOZA, JJ.

OPINION OF THE COURT BY GINOZA, J.

In the eight criminal cases that are part of this appeal, a bail bond was executed by a bail agent, the defendant failed to appear in court as required under the bond, and a bail forfeiture judgment was issued pursuant to Hawaii Revised Statutes (**HRS**) § 804-51 (2014). The primary question in the appeal is whether the notice to the "surety" about the bail

2

forfeiture judgment, which is required under HRS § 804-51, was satisfied by notice to the bail agent who signed the bail bond, or whether the insurance company that conferred power-of-attorney on the bail agent to execute the bail bond was the "surety" who should have received the notice.

Real Party in Interest/Appellant International Fidelity Insurance Company (**International Fidelity**) filed motions to set aside the bail forfeiture judgments in the eight criminal cases. In each case, either Ida Peppers (**Peppers**) or Linda Del Rio (**Del Rio**) of Freedom Bail Bonds (**FBB**), or Charles Fisher (**Fisher**) of AAA Local Bail Bonds (**AAA**), executed the bail bond as the "undersigned surety." For each of the bail bonds, International Fidelity had issued a power-of-attorney to either Peppers, Del Rio, or Fisher.[1] International Fidelity contends that it is the surety on the bail bonds, and thus the notice given to the bail agent in each case regarding the bail forfeiture judgment did not satisfy the notice requirements under HRS § 804-51.

The Circuit Court for the First Circuit (circuit court) held a consolidated hearing on International Fidelity's motions.[2] On October 31, 2012, the circuit court denied the motions by way of its "Findings of Fact, Conclusions of Law, and Order Denying International Fidelity Insurance Company's Consolidated Motions to Set Aside Judgment Entered Against International Fidelity Insurance Company" (**Order Denying Motions to Set Aside Forfeiture Judgment**).

On appeal, International Fidelity contends that the circuit court erred by:

(1) concluding that HRS § 804-51 did not require Plaintiff-Appellee State of Hawaiʻi (**State**) to give International

---

[1] Given the circuit court's unchallenged finding that Peppers, Del Rio, and Fisher were, at all times relevant, registered producers for International Fidelity, we refer to them collectively as the **"bail agents"** in these cases. See HRS § 431:9N-101 (Supp. 2015). We refer to FBB and AAA collectively as the **"bail bond companies."**

[2] The Honorable Richard K. Perkins presided.

3

Fidelity direct notice of the bail forfeiture judgments;

(2) concluding that International Fidelity received the notice required under HRS § 804-51;

(3) concluding that there was no violation of International Fidelity's due process rights, and further, violating International Fidelity's due process rights by upholding the forfeitures;

(4) declining to vacate the bail forfeiture judgments pursuant to Hawai'i Rules of Civil Procedure (**HRCP**) Rule 60(b) or HRS § 804-51;

(5) failing to find good cause to vacate the bail forfeiture judgments; and

(6) failing to enter a proper judgment.

For the reasons discussed below, we affirm. On the primary question presented, we hold in these cases that the bail agent was the "surety" and therefore, under HRS § 804-51, notice of the bail forfeiture judgment to the bail agent was proper. We also do not find merit in the other points of error raised by International Fidelity.

I. **Background**

The eight separate criminal cases were consolidated for purposes of this appeal. In each case, International Fidelity conferred power-of-attorney on either Peppers, Del Rio, or Fisher, to execute bail bonds. In each case, the circuit court declared the bail forfeited and entered a bail forfeiture judgment. Notice of each bail forfeiture judgment was given to the respective bail agent, either Peppers, Del Rio, or Fisher, through their bail bond company. In six of the cases, the bail bond company filed a motion to set aside the forfeiture judgment and all of these motions were denied. In all eight cases, even when the bail bond company had already filed a motion that had been denied, International Fidelity filed a motion to set aside the bail forfeiture judgment. International Fidelity's motions were filed long after the bail agent in each case had received

4

notice of the forfeiture judgment. International Fidelity's motions were also filed more than thirty days after it had received a letter in each case from the State of Hawai'i Judiciary regarding the respective bail forfeiture judgment.

After the consolidated hearing on International Fidelity's motions, the circuit court entered detailed findings of fact (**FOF**) for each case. None of the circuit court's findings are challenged on appeal, and thus we are bound by the findings. Bremer v. Weeks, 104 Hawai'i 43, 63, 85 P.3d 150, 170 (2004)("[F]indings of fact that are not challenged on appeal are binding on the appellate court.")(citations and ellipses omitted).

The circuit court's FOFs are as follows:

1. In each of the cases outlined below, the bail bond filed on behalf of the defendant contained the following language:

KNOW ALL MEN BY THESE PRESENT: THAT THE UNDERSIGNED SURETY, OR SURETIES, AS SURETY, HEREBY UNDERTAKE THAT THE SAID DEFENDANT WILL APPEAR AND ANSWER ALL CHARGES MENTIONED IN WHATEVER COURT IT MAY BE PROSECUTED WITHIN THE STATE OF HAWAII, AND WILL AT ALL TIMES BE AMENABLE TO THE ORDERS AND PROCESS OF THE COURT, AND, IF CONVICTED, WILL APPEAR FOR JUDGMENT, AND RENDER SELF IN EXECUTION THEREOF, OR FAILING TO PERFORM EITHER OF THESE CONDITIONS WILL PAY TO THE STATE OF HAWAII, AS PROVIDED IN SECTION 804-51 HAWAII REVISED STATUTES THE SUM OF ...

(emphasis added). Included thereafter was the sum of money the surety or sureties would pay to the State of Hawaii if the defendant "failed to perform either of these conditions." The bonds were signed by either Ida Peppers ("Peppers") or Linda Del Rio ("Del Rio") of Freedom Bail Bonds ("FBB") or Charles Fisher ("Fisher") of AAA Local Bail Bonds ("AAA").

2. Attached to the bail bond in each of the cases outlined below was a power-of-attorney that read as follows:[3]

KNOW ALL MEN BY THESE PRESENTS, that INTERNATIONAL FIDELITY INSURANCE COMPANY, a corporation duly organized and existing under the laws of the State of New Jersey, has constituted and appointed, and does hereby constitute and appoint, its true and lawful Attorney-

---

[3] Contrary to the circuit court's FOF 2, the various powers-of-attorney are not identical but all contained similar language to the language quoted by the circuit court. In any event, FOF 2 is unchallenged on appeal.

in-Fact, with full power and authority to sign the company's name and affix its corporate seal to, and deliver on its behalf as surety, any and all obligations as herein provided, and the execution of such obligations in pursuance of these presents shall be as binding upon the company as fully and to all intents and purposes as if done by the regularly elected officers of said company at its home office in their own proper person; and the said company hereby ratifies and confirms all and whatsoever its said Attorney-in-Fact may lawfully do and perform in the premises by virtue of these presents. . . . Authority of such Attorney-in-Fact is limited to the execution of appearance bonds and cannot be construed to guarantee defendant's future lawful conduct, adherence to travel limitation, fines, restitution, payments or penalties, or any other condition imposed by a court not specifically related to court appearances. A separate Power of Attorney must be attached to each bond executed.

3. As noted below, it was Peppers of FBB in Cr. Nos. 02-1-1718, 05-1-2446, 08-1-1192, 09-1-0616, 09-1-1364, and 11-1-0306, Del Rio of FBB in Cr. No. 10-1-1289, and Fisher of AAA in Cr. No. 10-1-0621, who executed the bail bonds as "the undersigned surety or sureties" and the authorized attorney-in-fact for [International Fidelity].

4. In **Cr. No. 02-1-1718**, a bail bond in the amount of $5000 was posted on behalf of **Defendant Karen Teruya** on March 24, 2009 ("Teruya Bond"). The Teruya Bond was executed by Peppers as the "undersigned surety, or sureties" on behalf of FBB and as authorized by the [International Fidelity] power of attorney.

a. A Judgment and Order of Forfeiture of Bail Bond was filed on July 13, 2009 after Teruya failed to appear at a hearing before Judge Steven Alm.

b. On July 13, 2009, notice of the entry of the Judgment and Order of Forfeiture of Bail Bond was sent pursuant to HRS § 804-51 by certified mail, return receipt requested, to Peppers of FBB as surety on the Teruya Bond.

c. On August 5, 2009, and again on October 20, 2009, FBB filed a Motion to Set Aside Judgment and Order of Forfeiture of Bail Bond and Extend Time to Locate and Surrender the Defendant.

d. On October 21, 2009, after a sixty-day continuance, the court orally denied FBB's motions and a written order to the same effect was filed on October 26, 2009.

e. On November 25, 2009, a letter was sent to [International Fidelity] by the Judiciary of the State of Hawaii ("Judiciary"), by certified mail, return receipt requested, notifying [International Fidelity] that judgment had been entered pursuant to HRS § 804-51 on July 13, 2009, and demanding payment. The return receipt was signed by the recipient at [International Fidelity], but not dated.

f. On or about June 1, 2012, 920 days after the November 25, 2009 letter, the court received [International Fidelity's] Motion to Set Aside Judgment Entered Against [International Fidelity] (which motion was filed on June 14, 2012 . . . ).

5. In **Cr. No. 05-1-2446,** a bail bond in the amount of $15,000 was posted on behalf of **Defendant Semisi Nelson** on October 28, 2005 ("Nelson Bond"). The Nelson Bond was executed by Peppers as the "undersigned surety, or sureties" on behalf of FBB and as authorized by the [International Fidelity] power of attorney.

a. A Judgment and Order of Forfeiture of Bail Bond was filed on December 20, 2005 after Nelson failed to appear at a hearing on December 12, 2005.

b. On December 20, 2005, notice of the entry of the Judgment and Order of Forfeiture of Bail Bond was sent pursuant to HRS § 804-51 to Peppers of FBB as surety on the Nelson Bond.

c. On January 26, 2006, FBB, as "Surety and Real Party in Interest," filed a Motion to Set Aside Judgment and Order of Forfeiture of Bail Bond.

d. On February 7, 2006, FBB's motion to set aside the bond forfeiture was granted and the bond was reinstated. The Order Granting Motion to Set Aside Judgment and Order of Forfeiture of Bail Bond and Oral Motion to Recall Bench Warrant and Reinstate Bail Bond was filed on February 13, 2006.

e. A second Judgment and Order of Forfeiture of Bail Bond was filed on January 23, 2009 after Nelson failed to appear at a hearing before Judge Richard Perkins on January 21, 2009.

f. On or about January 26, 2009, <u>notice of the entry of the Judgment and Order of Forfeiture of Bail Bond was sent pursuant to HRS § 804-51 by certified mail, return receipt requested, to Peppers of FBB as surety on the Nelson Bond</u>.

g. On February 5, 2009, FBB, as "Surety," filed a Motion to Set Aside Judgment and Order of Forfeiture of Bail Bond.

h. On April 30, 2009, after two thirty-day continuances, the court orally denied FBB's motion and a written order to the same effect was filed on May 5, 2009.

i. On September 8, 2009, the Judiciary sent a letter to [International Fidelity], by certified mail, return receipt requested, notifying [International Fidelity] that judgment had been entered pursuant to HRS § 804-51 on January 23, 2009, and demanding payment. The return receipt was signed by the recipient at [International Fidelity], but not dated.

j. On or about June 1, 2012, 998 days after the September 8, 2009 letter, the court received [International Fidelity's] Motion to Set Aside Judgment Entered Against [International Fidelity] (which motion was filed on June 14, 2012 . . . .).

6. In **Cr. No. 08-1-1192,** a bail bond in the amount of $75,000 was posted on behalf of **Defendant Conrado Cabigon Jr.** on August 25, 2008 ([sic]("Cabigon Bond"). The Cabigon Bond was executed by Peppers as the "undersigned surety, or sureties" on behalf of FBB and as authorized by the [International Fidelity] power of attorney.

a. A Judgment and Order of Forfeiture of Bail Bond was filed on August 16, 2010, after Cabigon failed to appear at a hearing before Judge Dexter Del Rosario on August 11, 2010.

b. On August 17, 2010, <u>notice of the entry of the Judgment and Order of Forfeiture of Bail Bond was sent</u>

pursuant to HRS § 804-51 by certified mail, return receipt requested, to Peppers of FBB as surety on the Cabigon Bond.

c. On September 15, 2010, FBB filed a Motion to Set Aside Judgment and Order of Forfeiture of Bail Bond and Extend Time to Locate and Surrender Defendant.

d. On September 22, 2010, the court orally denied FBB's motion, however, no written order was ever filed.

e. On November 9, 2010, the Judiciary sent a letter to [International Fidelity] by certified mail, return receipt requested, notifying [International Fidelity] that judgment had been entered pursuant to HRS § 804-51 on August 16, 2010, and demanding payment. [International Fidelity] received the letter on November 16, 2010.

f. On or about June 1, 2012, 564 days after the November 9, 2010 letter was received by [International Fidelity], the court received [International Fidelity's] Motion to Set Aside Judgment Entered Against [International Fidelity] (which motion was filed on June 14, 2012 . . . ).

7. In **Cr. No. 09-1-0616,** a bail bond in the amount of $20,000 was posted on behalf of **Defendant Cedric Muno** [sic][4] on March 27, 2009 ("Muno [sic] Bond"). The Muno [sic] bond was executed by Peppers as the "undersigned surety, or sureties" on behalf of FBB and as authorized by the [International Fidelity] power of attorney.

a. A Judgment and Order of Forfeiture of Bail Bond was filed on February 1, 2010, after Muno [sic] failed to appear at a hearing before Judge Steven Alm on January 11, 2010.

b. On February 1, 2010, notice of the entry of the Judgment and Order of Forfeiture of Bail Bond was sent pursuant to HRS § 804-51 by certified mail, return receipt requested, to Peppers of FBB as surety on the Muno [sic] Bond[.]

c. On March 1, 2010, FBB filed a Motion to Set Aside Judgment and Order of Forfeiture of Bail Bond and Extend Time to Locate and Surrender the Defendant.

d. On June 1, 2010, after two thirty-day continuances, the court orally denied FBB's motion.

e. On August 31, 2010, the Judiciary sent a letter to [International Fidelity] by certified mail, return receipt requested, notifying [International Fidelity] that judgment had been entered pursuant to HRS § 804-51 on February 1, 2010, and demanding payment. The return receipt was signed by the recipient at [International Fidelity], but not dated.

f. On or about June 1, 2012, 641 days after the August 31, 2010 letter, the court received [International Fidelity's] Motion to Set Aside Judgment Entered Against [International Fidelity] with respect to the Muno [sic] Bond (which motion was filed on June 14, 2012 . . . ).

g. Also in Cr. No. 09-1-0616, a bail bond in the amount of $11,000 was posted on behalf of Defendant Antonias Toloai on March 28, 2009 ("Toloai Bond"). The Toloai Bond was executed by Peppers as the "undersigned surety, or sureties" on behalf of FBB and as authorized by the [International Fidelity] power of attorney.

h. A Judgment and Order of Forfeiture of Bail

---

4 In Cr. No. 09-1-0616, the defendant's name is Cedro Muna.

Bond was filed on August 12, 2009, after Toloai failed to appear at a hearing before Judge Steven Alm on July 24, 2009.

 i. On or about August 12, 2009, notice of the entry of the Judgment and Order of Forfeiture of Bail Bond was sent pursuant to HRS § 804-51 by certified mail, return receipt requested, to Peppers of FBB as surety on the Toloai Bond.

 j. On August 31, 2009, FBB filed a Motion to Set Aside Judgment and Order of Forfeiture of Bail Bond and Discharge Bonds.

 k. On September 21, 2009, the court orally granted FBB's motion and both FBB and [International Fidelity] were discharged as surety on the Toloai Bond. No written order was filed.

 8. In **Cr. No. 09-1-1364**, a bail bond in the amount of $1000 was posted on behalf of **Defendant Justin Nakamura** on September 11, 2009 ("Nakamura Bond"). The Nakamura Bond was executed by Peppers as the "undersigned surety, or sureties" on behalf of FBB and as authorized by the [International Fidelity] power of attorney.

 a. A Judgment and Order of Forfeiture of Bail Bond was filed on November 19, 2009, after Nakamura failed to appear at a hearing before Judge Karen Ahn on November 16, 2009.

 b. On November 19, 2009, <u>notice of the entry of the Judgment and Order of Forfeiture of Bail Bond was sent pursuant to HRS § 804-51 by certified mail, return receipt requested, to Peppers of FBB as surety on the Nakamura Bond</u>.

 c. On January 15, 2010, the Judiciary sent a letter to [International Fidelity] by certified mail, return receipt requested, notifying [International Fidelity] that judgment had been entered pursuant to HRS § 804-51 on November 19, 2009, and demanding payment. The return receipt was signed by the recipient at [International Fidelity], but not dated.

 d. On or about June 1, 2012, 869 days after the January 15, 2010 letter, the court received [International Fidelity's] Motion to Set Aside Judgment Entered Against [International Fidelity] (which motion was filed on June 14, 2012 . . . .).

 9. In **Cr. No. 10-1-0621**, a bail bond in the amount of $100,000 was posted on behalf of **Defendant John Paul Luna** on April 29, 2010 ("Luna Bond"). The Luna Bond was executed by Fisher as the "undersigned surety, or sureties" on behalf of AAA and as authorized by the [International Fidelity] power of attorney.

 a. A Judgment and Order of Forfeiture of Bail Bond was filed on May 26, 2011, after Luna failed to appear at a hearing before Judge Dexter Del Rosario on May 11, 2011.

 b. On May 27, 2011, <u>notice of the entry of the Judgment and Order of Forfeiture of Bail Bond was sent pursuant to HRS § 804-51 by certified mail, return receipt requested, to Fisher of AAA as surety on the Luna Bond</u>.

 c. On July 13, 2011, the Judiciary sent a letter to [International Fidelity] by certified mail, return receipt requested, notifying [International Fidelity] that judgment had been entered pursuant to HRS § 804-51 on May 27, 2011, and demanding payment. The letter was received by

[International Fidelity] on July 18, 2011.

d. On July 28, 2011, AAA filed a Motion to Set Aside Judgment and Order of Forfeiture of Bail Bond and Stay of Enforcement of Judgment.

e. At the hearing on the motion on August 31, 2011, the court orally denied the motion and a written order to the same effect was filed on September 8, 2011.

f. On November 17, 2011, AAA filed a Motion to Reconsider AAA Local Bail Bonds' Motion to Set Aside Judgment and Order of Forfeiture of Bail Bond and Stay of Enforcement in light of the apprehension of Luna on the mainland on October 3, 2011. The motion was denied by the court on January 18, 2012.

g. On or about June 1, 2012, 325 days after the July 13, 2011 letter, the court received [International Fidelity's] Motion to Set Aside Judgment Entered Against [International Fidelity] (which motion was filed on June 14, 2012 . . . ).

10. In **Cr. No. 10-1-1289**, a bail bond in the amount of $2000 was posted on behalf of **Defendant David K. Berry** on June 2, 2010 ("Berry Bond"). The Berry Bond was executed by Del Rio as the "undersigned surety, or sureties" on behalf of FBB and as authorized by the [International Fidelity] power of attorney.

a. A Judgment and Order of Forfeiture of Bail Bond was filed on September 2, 2010, after Berry failed to appear at a hearing before Judge Richard Perkins on August 30, 2010.

b. On September 2, 2010, <u>notice of the entry of the Judgment and Order of Forfeiture of Bail Bond was sent pursuant to HRS § 804-51 by certified mail, return receipt requested, to Peppers of FBB as surety on the Berry Bond</u>.

c. On October 18, 2010, the Judiciary sent a letter to [International Fidelity] by certified mail, return receipt requested, notifying [International Fidelity] that judgment had been entered pursuant to HRS § 804-51 on September 2, 2010, and demanding payment. The return receipt was signed by the recipient at [International Fidelity], but not dated.

d. On November 15, 2010, FBB filed a Motion to Set Aside Judgment and Order of Forfeiture of Bail Bond, Exonerate and Discharge Bond. On the same day, the motion was summarily denied as untimely.

e. On or about June 1, 2012, 593 days after the October 18, 2010 letter, the court received [International Fidelity's] Motion to Set Aside Judgment Entered Against [International Fidelity] with respect to the Berry Bond (which motion was filed on June 14, 2012 . . . . ).

11. In **Cr. No. 11-1-0306**, a bail bond in the amount of $15,000 was posted on behalf of **Defendant Steven D. Ferraris** on March 8, 2011 ("Ferraris Bond"). The Ferraris Bond was executed by Peppers as the "undersigned surety, or sureties" on behalf of FBB and as authorized by the [International Fidelity] power of attorney.

a. A Judgment and Order of Forfeiture of Bail Bond was filed on January 27, 2012 after [Ferraris] failed to appear at a hearing before Judge Richard Perkins on November 22, 2011.

b. On January 27, 2012[,] <u>notice of the entry of the Judgment and Order of Forfeiture of Bail Bond was sent</u>

pursuant to HRS § 804-51 by certified mail, return receipt requested, to Peppers of FBB as surety on the Ferraris Bond.

c. On March 28, 2012, the Judiciary sent a letter to [International Fidelity] by certified mail, return receipt requested, notifying [International Fidelity] that judgment had been entered pursuant to HRS § 804-51 on January 27, 2012, and demanding payment. The letter was received by [International Fidelity] on April 2, 2012.

d. On May 17, 2012, 45 days after its receipt of the March 28, 2012 letter, [International Fidelity] filed its Motion to Set Aside Judgment Entered Against [International Fidelity] with respect to the Ferraris Bond.

12. In all but two of the instant cases, either FBB or AAA filed a motion to set aside the forfeiture judgment within thirty days of receiving notice. In a majority of those cases, the motions, though ultimately unsuccessful, were continued to allow the bond companies more time to locate the defendants. In at least two instances, in Cr. Nos. 05-1-2446 and 09-1-0616, [International Fidelity] benefitted from the court's granting of timely motions to set aside filed by FBB.

13. In none of the cases did [International Fidelity] file an application or motion for relief from the forfeiture judgment within thirty days of receipt of notice of the entry of the judgment by FBB or AAA.

14. Each letter from the Judiciary to [International Fidelity] concerning the bail forfeitures at issue in this proceeding indicates that it is a "Notification of Bail Bond Forfeiture," states that "judgment has been entered," gives the date of the judgment and the amount forfeited, the case name and number, the name of the issuing general agent, and the policy number matching the power of attorney attached to the bail bond, and ends with a demand for payment in the following (or similar) language:

> Our records indicate that payment is due and owing. If the payment is not immediately received, appropriate legal action will be taken, including but not limited to requesting the appropriate Court to determine sufficiency of the surety and/or referring the matter to the State of Hawaii's Department of the Attorney General to commence collection actions.

15. None of the judgments at issue in these proceedings have been executed upon.

16. In none of the cases did [International Fidelity] file an application or motion for relief from the forfeiture judgment within thirty days of receiving written notice from the Judiciary of the entry of the judgment.

17. At all times relevant herein, Peppers, Del Rio, and Fisher were registered producers for [International Fidelity] in the State of Hawaii.

18. At all times relevant herein, the contract between [International Fidelity] (referenced as "the Company") and Peppers (referenced as "the Retailer") provided that "the Retailer will send, immediately, notice

11

> to the Company of any forfeitures declared on any bonds
> written by him [sic], since such may affect the Company."
>
> 19. At all times relevant herein, the contract between
> [International Fidelity] and AAA provided that "the Producer
> will send immediately, notice to International of any
> defaults, forfeitures, or breaches declared on any bonds
> written by or on behalf of Producer."

(Emphasis added.)

As noted, in six of the cases, either FBB or AAA filed a motion to set aside the bail forfeiture judgment and those motions were denied. In all eight cases -- either after the bail bond company's motion had been denied, or more than thirty days had passed after notice to the bail agent and no motion to set aside was filed -- the Judiciary sent a letter to International Fidelity notifying it of the forfeiture judgment and demanding payment. At varying times, but in each case more than thirty days after receiving the letter from the Judiciary, International Fidelity filed its own motion seeking to set aside the forfeiture judgment.

In its motions to set aside the forfeiture judgment, International Fidelity argued that it must be provided relief from the respective bail forfeiture judgment because it was not provided notice under HRS § 804-51, which deprived International Fidelity of the opportunity to search for the absconded defendant or to file a motion within thirty days as required by § 804-51. International Fidelity further asserted that the notice provided to the bail bond company could not be imputed to International Fidelity, and that the letters from the Judiciary to International Fidelity did not constitute notice under HRS § 804-51. Finally, International Fidelity asserted that because it did not have direct notice of the forfeiture judgments, the circuit court lacked jurisdiction to execute on the judgments.

In the Order Denying the Motions to Set Aside Forfeiture Judgment, in addition to its findings of fact, the circuit court issued a number of conclusions of law (**COL**). COLs 7, 8, and 9 are particularly important, stating:

12

7. Contrary to [International Fidelity's] assertions, the legislature intended the term "surety," as used in the notice provisions of HRS § 804-51, to apply to bondspersons such as Pepper[s] and Del Rio of FBB and Fisher of AAA. As noted by the Senate Judiciary Committee in its report on the bill that amended § 804-51 to require written notice of bond forfeitures,

> [t]he purpose of this bill is to change the present law by requiring that the courts give a written notice to the bail bondsman (referred to as the surety in Chapter 804, Hawaii Revised Statutes) upon forfeiture of any bail bond. A bail bond is forfeited when a criminal defendant fails to appear for a scheduled court appearance. This bill would also allow a bail bondsman thirty days, instead of the present ten, to object to any forfeiture of a bail bond.

Senate Stand. Comm. Rep. No. 857, 1989 Senate Journal at 1127 (emphasis added).

8. Thus, under § 804-51, notice need only be given to the bondsperson to trigger the running of the thirty-day filing period.

9. In each of the instant matters, notice to FBB or AAA, as the case may be, satisfied the notice requirement of § 804-51 and subjected [International Fidelity] to execution on the bond unless a motion or application showing good cause why execution should not issue were filed with the court within the thirty-day period following receipt of notice by FBB or AAA. While FBB or AAA timely filed motions to set aside in most of the cases, none were successful as to the forfeiture judgements at issue in this proceeding. [International Fidelity] did not, within thirty days of notice to FBB or AAA, file a motion or application showing good cause in any of the instant cases.

(Emphasis in original and added.) The circuit court thus held that, given International Fidelity's failure to timely file its motions to set aside the forfeiture judgments, the court was without jurisdiction to consider the motions under State v. Ranger Ins. Co. Ex rel. James Lindblad, Inc., 83 Hawai'i 118, 124 n.5, 925 P.2d 288, 294 n.5 (1996).[5]

---

[5] In Ranger Ins., the surety filed a motion to set aside a bail forfeiture judgment, which was denied, and then subsequently filed a motion to vacate and to stay execution on the bail forfeiture judgment. 83 Hawai'i at 120, 925 P.2d at 290. The Hawai'i Supreme Court held that the second motion did "not provide a legal basis for the relief requested . . . because it was not filed within the time limit imposed by HRS § 804-51, and the circuit court was therefore without power to consider it." 83 Hawai'i at 124 n.5, 925 P.2d

(continued...)

In addressing International Fidelity's other arguments, the circuit court also concluded, in pertinent part, that: (1) pursuant to HRCP Rule 81(a)(8), the HRCP do not apply to bail forfeiture proceedings, and thus the court declined to afford relief under HRCP Rule 60; (2) even assuming that notice to the bail bond companies was not notice to International Fidelity, International Fidelity received notice in each case via the letter from the Judiciary and failed to file the required motion to set aside within thirty days of receiving those letters; and (3) International Fidelity's due process rights were not violated.

International Fidelity timely appealed from the circuit court's Order Denying Motions to Set Aside Forfeiture Judgment.

## II. Standards of Review

### A. Conclusions of Law

> We review the trial court's conclusions of law *de novo* under the "right/wrong" standard. Under this ... standard, we examine the facts and answer the question without being required to give any weight to the trial court's answer to it. Thus, a conclusion of law is not binding upon the appellate court and is freely reviewable for its correctness.

State v. Kane, 87 Hawaiʻi 71, 74, 951 P.2d 934, 937 (1998) (citations, quotation marks, and brackets omitted and block format altered).

### B. Statutory Interpretation

Resolving issues presented in this appeal requires the interpretation of relevant statutory provisions.

> Statutory interpretation is a question of law reviewable *de novo*.
>
> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation

---

[5](...continued)
at 294 n.5. The supreme court further succinctly stated that "HRS § 804-51 permits the filing neither of a *second* motion seeking to show 'good cause why execution should not issue' nor *any* motion after the closing of the thirty-day window." Id.

to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

If the statutory language is ambiguous or doubt exists as to its meaning, courts may take legislative history into consideration in construing a statute. We may also consider legislative history to assist in confirming our interpretation of a statute.

State v. Miles, 135 Hawai'i 525, 527, 354 P.3d 178, 180 (App. 2015) (citations and quotation marks omitted).

This court has numerous tools to construe an ambiguous statute:

[T]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool. This court may also consider the reason and spirit of the law, and the cause which induced the legislature to enact it to discover its true meaning. Laws *in pari materia*, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another.

*In re Water Use Permit Applications*, 94 Hawai'i 97, 144, 9 P.3d 409, 456 (2000) (internal citations, internal quotation marks, brackets, and ellipses omitted; block quote format changed). *See also* HRS § 1-15 ("Where the words of a law are ambiguous[,] ... [t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.").

Estate of Roxas v. Marcos, 121 Hawai'i 59, 68, 214 P.3d 598, 607 (2009).

Specifically, with respect to HRS § 804-51, this court has stated:

The construction of Hawai'i's bail bond forfeiture scheme, as set forth in Hawai'i Revised Statutes (HRS) § 804-51 (1993), and in particular, the determination of whether a principal or a surety under a bail bond may secure relief from a judgment of forfeiture, involves a question of law reviewable *de novo*.

However, a lower court's order denying relief from a judgment of bail bond forfeiture on grounds that a surety has not, as required by HRS § 804-51, shown good cause why execution should not issue upon the judgment is reviewed for abuse of discretion. An abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or

> disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

State v. Flores, 88 Hawai'i 126, 130, 962 P.2d 1008, 1012 (App. 1998) (citations and quotation marks omitted).

## III. Discussion

### A. Notice To The "Surety" Under HRS § 804-51

#### 1. Overview

International Fidelity contends that it is the "surety" in these cases, and therefore, the circuit court erred in concluding that HRS § 804-51 did not require notice of the bail forfeiture judgments be given to International Fidelity. International Fidelity argues that FBB and AAA were "bail agents," that those working for FBB and AAA were "bondspersons," and that the circuit court's conclusion that the term "surety" in HRS § 804-51 equals "bondsperson" produces an absurd result because it would invalidate or confuse the safeguards in HRS Chapter 804 that assure qualified sureties post bonds, would allow a bondsperson without proper qualifications to post bond, or would require a bondsperson to meet the same stringent qualifications as a surety.

The State, in turn, relies on two arguments. First, the State argues that FBB and AAA were the agents of International Fidelity and thus notice given to FBB or AAA was the equivalent of notice to International Fidelity. In this regard, the State relies on the contracts between International Fidelity and FBB or AAA, respectively, as well as arguments based on principles of agency (i.e., that FBB and AAA had express or apparent authority to receive notice for International Fidelity). Second, the State contends that the letters sent by the Judiciary directly to International Fidelity, providing notification of the bail forfeiture judgment and, inter alia, demanding payment of the forfeited bonds, constituted sufficient notice under HRS § 804-51.

We do not adopt either party's position, but rather agree with the circuit court to the extent it held that the term

16

"surety" in HRS § 804-51 refers to the bondspersons (or bail agents) in these cases -- Peppers, Del Rio, and Fisher. Like the circuit court, we believe the relevant legislative history for HRS § 804-51 clearly supports this interpretation of the statute. It is also consistent with HRS § 804-1 (2014), which provides that the surety signs on the recognizance or bond. In these cases, it is undisputed that either Peppers, Del Rio, or Fisher executed the bail bond in each case as "the undersigned surety or sureties."

Our holding is further confirmed by analyzing relevant provisions in HRS Chapter 804, as well as related provisions in HRS Chapter 431 (Insurance Code) pertaining to "bail agents" (also referred to as "insurance producers" under the Insurance Code). We recognize at the start that the terminology used in HRS Chapter 804 and in Chapter 431 are not identical, but understandably so, given that these chapters deal with diverse and broad subjects. However, a careful reading of the pertinent and related statutory provisions *in pari materia* establish that a person or entity can qualify as a "surety" under Chapter 804 in a variety of ways, including by satisfying certain requirements in Chapter 431. Chapter 804 expressly provides that when an "insurance bond" as defined in HRS § 431:1-210(1) (2005) is posted as bail (such as in this case), a person may qualify as a "surety" by satisfying the requirements of HRS Chapter 431 Article 9A (Producer Licensing), which addresses "insurance producers." See HRS § 804-10.5 (2014); HRS § 431:1-210(1); HRS Chapter 431 Article 9A. As further established under Chapter 431 Article 9N (Bail Agents; Sureties), a "bail agent" is, *inter alia*, a licensed "insurance producer" under Chapter 431 Article 9A appointed by an authorized "surety insurer." HRS § 431:9N-101 (Supp. 2015). Thus, in the context of these cases, Peppers, Del Rio, or Fisher was the "surety"/"insurance producer"/"bail agent" in each case, whereas International Fidelity was the "surety insurer."

17

Rather than lead to an absurd result, as argued by International Fidelity, the circuit court's ruling that Peppers, Del Rio, or Fisher, respectively, was the "surety" in each case is consistent with statutory provisions adopted in Chapter 804, as well as Articles 9A and 9N of Chapter 431, that provide safeguards related to insurance bail bonds and that require the proper qualification and licensing of sureties in these circumstances.

### 2. HRS Chapter 804 and HRS Chapter 431

HRS § 804-51, which sets forth the notice requirement at issue in this appeal, states:

§804-51 **Procedure**. Whenever the court, in any criminal cause, forfeits any bond or recognizance given in a criminal cause, the court shall immediately enter up judgment in favor of the State and against the principal or principals and surety or sureties on the bond, jointly and severally, for the full amount of the penalty thereof, and shall cause execution to issue thereon immediately after the expiration of thirty days from the date that notice is given via personal service or certified mail, return receipt requested, to the surety or sureties on the bond, of the entry of the judgment in favor of the State, unless before the expiration of thirty days from the date that notice is given to the surety or sureties on the bond of the entry of the judgment in favor of the State, a motion or application of the principal or principals, surety or sureties, or any of them, showing good cause why execution should not issue upon the judgment, is filed with the court. If the motion or application, after a hearing held thereon, is sustained, the court shall vacate the judgment of forfeiture and, if the principal surrenders or is surrendered pursuant to section 804-14 or section 804-41, return the bond or recognizance to the principal or surety, whoever shall have given it, less the amount of any cost, as established at the hearing, incurred by the State as a result of the nonappearance of the principal or other event on the basis of which the court forfeited the bond or recognizance. If the motion or application, after a hearing held thereon, is overruled, execution shall forthwith issue and shall not be stayed unless the order overruling the motion or application is appealed from as in the case of a final judgment.

This section shall be considered to be set forth in full in words and figures in, and to form a part of, and to be included in, each and every bond or recognizance given in a criminal cause, whether actually set forth in the bond or recognizance, or not.

(Emphasis added.) The plain language of HRS § 804-51 provides that whenever a court forfeits any bond or recognizance, judgment must be immediately entered against "the principal or principals

and surety or sureties on the bond" and notice of the forfeiture judgment must be given to the "surety or sureties on the bond" in order to trigger the thirty-day wait period before execution can issue on the bail forfeiture judgment.

As highlighted by the circuit court, when the Legislature amended HRS § 804-51 in 1989 to require notice to "the surety or sureties on the bond," the legislative history indicates the intent was to require notice to the "bail bondsman," with the Senate Judiciary Committee report noting that "bail bondsman" is referred to as the "surety" in Chapter 804. See S. Stand. Comm. Rep. No. 857, in 1989 Senate Journal at 1127.[6] To provide further perspective, we quote even more of the report than was referenced by the circuit court:

> The purpose of this bill is to change the present law by requiring that the courts give a written notice to the **bail bondsman** (referred to as the **surety** in Chapter 804, Hawaii Revised Statutes) upon forfeiture of any bail bond. A bail bond is forfeited when a criminal defendant fails to appear for a scheduled court appearance. This bill would also allow a bail bondsman thirty days, instead of the present ten, to object to any forfeiture of a bail bond.
>
> . . . .
>
> This bill is to address the situation where a **bail bondsman is not informed for some time after the defendant fails to make a court appearance**. Allegedly, the first several days are crucial to a bail bondsman's ability to find a defendant. Bail bondsmen maintain that if the information that the defendant has not appeared for court is obtained immediately, then the bondsman has a good chance of finding the defendant before he leaves Hawaii.
>
> The present statute allows for a bail bondsman to have the bail forfeiture set aside, but only within ten days after the defendant has failed to appear for court. Bail bondsmen claim that they are not even informed within this ten-day period that the defendant has failed to appear for court.

Id. at 1127-28 (emphasis added). We agree with the circuit court

---

[6] The 1989 amendments to HRS § 804-51 were adopted in Act 289, related to Senate Bill No. 740. See 1989 Haw. Sess. Laws, Act 289, § 1 at 643. The relevant language of Act 289 originated, however, in Senate Bill No. 1061, which is the bill referenced in Senate Standing Committee Report No. 857. The language of Senate Bill No. 1061, S.D.1 was later incorporated into Senate Bill No. 740. See H. Stand. Comm. Rep. No. 1285, in 1989 House Journal at 1318.

that this legislative history assists in clarifying the statute, in that it appears the Legislature intended notice to the bail bondsman so that, *inter alia*, the bail bondsman would be in a better position to apprehend the defendant who failed to appear for court. This legislative history does not reflect an intent to provide notice to the insurance company on an insurance bail bond or that such an insurance company be considered the "surety" under HRS Chapter 804.

Moreover, although HRS Chapter 804 does not define the terms "surety" or "sureties," the terms are utilized in other sections within Chapter 804 which provide context and guidance for our analysis. This includes HRS § 804-1, which provides:

> **§804-1 Bail defined.** Bail, or the giving of bail, is the signing of the recognizance by the defendant and the defendant's surety or sureties, conditioned for the appearance of the defendant at the session of a court of competent jurisdiction to be named in the condition, and to abide by the judgment of the court.[7]

(Emphasis added.) Based on HRS § 804-1, the "recognizance" or the bond is signed by the defendant and the "surety or sureties." The bail bonds in the instant eight cases were signed by Peppers, Del Rio, or Fisher (of either FBB or AAA), and each bond indicates a promise to comply with applicable conditions.

We also find significant that HRS § 804-10.5 provides the qualifications for a sufficient surety. HRS § 804-10.5 provides in full:

> **§804-10.5 Sureties; qualification.** (a) In determining the sufficiency of a surety or sureties, the court shall consider the surety's or sureties':
> (1)  Character;

---

7   "Recognizance" means "[a] bond or obligation, made in court, by which a person promises to perform some act or observe some condition, such as to appear when called[.] . . . Most commonly, a recognizance takes the form of a bail bond that guarantees an unjailed criminal defendant's return for a court date[.]" *Recognizance*, Black's Law Dictionary (10th ed. 2014). For a "bond" related to bail, the Hawai'i Supreme Court has quoted the following with approval: "[a] bond is a contract between the surety and the government that[,] if the government releases the principal from custody, the surety will undertake that the principal will appear personally at any specified time and place.... It is thus the surety's responsibility to ensure the principal's attendance." State v. Camara, 81 Hawai'i 324, 325, 916 P.2d 1225, 1226 (1996)(quoting United States v. Craft, 763 F.2d 402, 404 (11th Cir. 1985)).

          (2)   Reliability;
          (3)   Place of residence; and
          (4)   Financial and employment circumstances.
     (b)   No person shall be sufficient surety who:
          (1)   Has been convicted of perjury for submitting a
                false statement under section 804-11.5;
          (2)   Does not satisfy the requirements of section
                804-11.5; or
          (3)   Does not satisfy the requirements of article 9A,
                chapter 431, if posting an insurance bond as
                defined in section 431:1-210(1).

(Emphasis added.)[8]   Given HRS § 804-10.5(b), there are different

ways in which a person or entity may qualify as a "sufficient

surety."   One way, is by satisfying the requirements of HRS

§ 804-11.5 (2014).   Another way, and pertinent to this appeal, is

by satisfying the requirements of HRS Chapter 431 Article 9A when

posting an insurance bond as defined in HRS § 431:1-210(1).

          HRS § 431:1-210(1) provides:

          §431:1-210 Surety insurance defined. Surety insurance
          includes:
          (1) Bail bond insurance, which is a guarantee that any
          person, in or in connection with any proceedings in any
          court, will:
               (A)   Attend in court when required, or
               (B)   Will obey the orders of judgment of the court,
                     as a condition to the release of the person from
                     confinement, and the execution of bail bonds for
                     any such purpose.   The making of property or
                     cash bail does not constitute the transacting of
                     bail bond insurance.

(Emphasis added.)   Under HRS § 804-10.5(b) and § 431:1-210(1),

the bonds posted in the cases in this appeal constituted

"insurance bonds" or "bail bond insurance."

          In order to be a sufficient "surety" under HRS § 804-

10.5(b)(3), one must meet the requirements of Article 9A of the

Insurance Code.   Article 9A "governs qualifications and

procedures for the licensing of insurance producers."   HRS

§ 431:9A-101 (Supp. 2015) (emphasis added).   Article 9A defines

an "insurance producer" as a "person required to be licensed

_____

     [8]   As further discussed infra at footnote 11, this version of HRS
§ 804-10.5 was adopted as of July 1, 2006.   See 2006 Haw. Sess. Laws Act 154,
§ 46 at 447.   It was therefore in effect by the time the bail bond was
executed in seven of the eight cases in this appeal.   Only the bail bond in
the Nelson case, which was filed on October 28, 2005, was posted before this
version of HRS § 804-10.5 came into effect.

under the laws of this State to sell, solicit, or negotiate insurance." HRS § 431:9A-102 (2005). The circuit court found, and it is uncontested in the instant eight cases, that Peppers, Del Rio, and Fisher were registered producers for International Fidelity.[9]

Providing even further clarity, in 2008, the Legislature adopted HRS Chapter 431, Article 9N.[10] Therein, HRS § 431:9N-101 (Supp. 2015) provides, in pertinent part:

> **[§431:9N-101] Definitions.** As used in this article:
> "**Bail agent**" means a <u>licensed insurance producer under article 9A who is appointed by an authorized **surety insurer**</u>, furnishes bail for compensation in any court in this State, and has the <u>power of attorney</u> to execute or countersign bail bonds in connection with judicial proceedings.

(Emphasis added.) As noted above, even International Fidelity asserts that FBB and AAA are the "bail agents" in these cases. We refine that even further to conclude that, given the circuit court's undisputed finding that Peppers, Del Rio, and Fisher were registered producers for International Fidelity at all relevant times, they are the "bail agents" in these cases. They are a specific subset of "insurance producers" under Article 9A who sold, solicited, and negotiated bail bond insurance for International Fidelity, the "surety insurer." Therefore, under HRS § 804-10.5(b)(3) and Chapter 431 Articles 9A and 9N, the sureties/insurance producers/bail agents for purposes of the cases in this appeal are Peppers, Del Rio, and Fisher,

---

[9] It is also relevant that in four of the cases, where the bail bond was apparently filed after hours, there are certifications in the record in which Peppers or Del Rio certify, *inter alia*, that: they are "licensed to sell, solicit and negotiate surety insurance in this state" (which is language consistent with HRS § 431:9A-102); they are enclosing documentation showing their "insurance producer license" and that they are an "agent of a surety insurer pursuant to HRS 431"; and they are authorized and appointed by the "surety insurer" named in the power-of-attorney attached to the bond.

[10] When initially proposed, what became Article 9N of the Insurance Code was proposed as part of an amendment to HRS Chapter 804. See S.B. 1961, 24th Leg., Reg. Sess. (Haw. 2007).

respectively.[11]

Rather than an absurd result, as argued by International Fidelity, the circuit court's holding that Peppers, Del Rio, and Fisher were the sureties in these cases is consistent with the safeguards intended by the Legislature related to sureties when an insurance bail bond is posted in a criminal case. That is, as provided in Chapter 804 and Articles 9A and 9N of Chapter 431, bail bond sureties/insurance producers/bail agents must be properly licensed, are subject to various actions by the Insurance Commissioner, and have specified obligations and responsibilities. See HRS § 804-10.5; HRS Chapter 431, Articles 9A and 9N.[12]

---

[11] Article 9N of the Insurance Code became effective on July 1, 2008. See 2008 Haw. Sess. Laws Act 134, § 3 at 352. In seven of the eight cases in this appeal, Article 9N was already in effect when the bail bond was posted, the only exception being State v. Nelson. The bail bond was posted in Nelson on October 28, 2005. Furthermore, in 2005, HRS § 804-10.5(b)(3) provided that a sufficient surety was one who met the requirements of "Article 9, chapter 431, if posting an insurance bond as defined in section 431:1-210(1)," and did not reference Article 9A. See HRS § 804-10.5 (1993). In 2005, Article 9, Chapter 431 covered "the qualifications and procedures for granting licenses to all insurance adjusters, independent bill reviewers, and limited service representatives." HRS § 431:9-101 (2005). It was not until 2006 that HRS § 804-10.5(b)(3) was amended to reference Article 9A. See 2006 Haw. Sess. Laws Act 154, § 46 at 447.

Notwithstanding that Article 9N had not yet been adopted and an earlier version of HRS § 804-10.5(b)(3) was in place in 2005 -- when the bail bond was posted in Nelson -- the result remains the same in that case. In 2005, HRS § 804-1 provided, as it does today, that the "recognizance" or bond be signed by the defendant and the surety. Peppers signed the bail bond in Nelson as the undersigned surety. Moreover, Peppers's own certification in Nelson establishes her role as the insurance producer in Nelson. She executed a certification in that case providing, inter alia, that she is "licensed to sell, solicit and negotiate surety insurance in this state," she has an "insurance producer license," she is an "agent of a surety insurer pursuant to HRS 431," and she is authorized and appointed by the "surety insurer" named in the power-of-attorney attached to the bond. Peppers, not International Fidelity, is the surety in Nelson.

[12] Our reading of the relevant statutes in HRS Chapter 804, as well as Chapter 431 Article 9A and 9N, is consistent with Hawai'i Rules of Penal Procedure (HRPP) Rule 46, which provides:

> **Rule 46 Bail; Bond**
> (a) Bail. The right to bail before conviction or upon review, the form and amount thereof, and the matters of justification of sureties, forfeiture of bail, and exoneration of obligors and sureties shall be as provided by law. (See Hawai'i Revised Statutes, Chapter 804.)

(continued...)

23

Based on the above, we conclude that the notice of the bail forfeiture judgment that is required under HRS § 804-51 was properly provided to Peppers, Del Rio, or Fisher, the respective surety in the instant cases. Given the proper notice to the surety, the circuit court correctly ruled that the motions filed by International Fidelity to set aside the bail forfeiture judgments were untimely and that the court lacked authority with regard to these motions.[13] Ranger Ins. Co., 83 Hawai'i at 124 n.5, 925 P.2d at 294 n.5 ("HRS § 804-51 permits the filing neither of a *second* motion seeking to show 'good cause why execution should not issue' nor *any* motion after the closing of the thirty-day window.").

**B.    International Fidelity's Due Process Rights Were Not Violated**

International Fidelity claims that it has a property interest protected by due process because the State seeks to collect from it on the bail forfeiture judgments, and that its

---

[12](...continued)
> (b) Bond.  A party seeking release on bail by posting bond shall submit the bond in a form that substantially complies with Form J annexed to these rules. If a bail bond is secured by insurance, a copy of the **bail agent's** power of attorney shall be attached to the bond, and shall be supported by the affidavit or declaration of the **bail agent** authorized to furnish bail for compensation. The declaration or affidavit shall identify the **insurer**, provide the agent's and insurer's license numbers, attest the agent and the insurer are currently licensed and in good standing with the Insurance Commissioner of the State of Hawai'i, and attest the agent and the insurer are in compliance with Hawai'i law governing bail bonds.

(Emphasis added.)  Subsection (b) was added to the rule and became effective as of July 1, 2011.  Thus, that subsection was not yet in place when the bail bonds in the instant eight cases were issued.  Nonetheless, HRPP Rule 46(b) supports our reading of the relevant statutes.

[13]  Because we hold that the State was only required to provide notice to Peppers, Del Rio, or Fisher, we need not reach International Fidelity's challenge to the circuit court's alternative holding, that the letters sent by the Judiciary to International Fidelity were sufficient notice under HRS § 804-51.  Likewise, we need not consider International Fidelity's assertion that the circuit court erred by failing to find good cause to set aside the bail forfeiture judgments.  The circuit court did not reach this issue because it correctly determined that International Fidelity's motions were untimely.

due process rights were violated because it was not provided with the notice required under HRS § 804-51. International Fidelity relies on <u>Klinger v. Kepano</u>, 64 Haw. 4, 635 P.2d 938 (1981). It also relies on <u>State v. Rosillo</u>, 645 N.W.2d 735 (Minn. Ct. App. 2002), a case it contends is analogous to the instant cases.

Given its interest in insuring the amounts forfeited under the bail bonds, we agree with International Fidelity that it has a property interest protected by due process rights. <u>See</u> <u>Brown v. Thompson</u>, 91 Hawai'i 1, 9, 979 P.2d 586, 594 (1999). Given the circumstances, however, we do not agree that its due process rights have been violated.

To the extent International Fidelity's argument is based on the contention that the notice requirements under HRS § 804-51 have not been met, that contention has already been rejected. Thus, we consider whether, the requirements under HRS § 804-51 having been met, International Fidelity's due process rights have been violated.

Citing to <u>Klinger</u>, International Fidelity contends that it was entitled to notice "reasonably calculated" to apprise it of the bail forfeiture judgment and an opportunity to show cause why the forfeitures should not be executed upon. <u>Klinger</u> states, in relevant part:

> The [United States Supreme Court] noted that due process "at a minimum ... require(s) that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." [<u>Mullane v. Cent. Hanover Bank & Trust Co.</u>, 339 U.S. 306, 313]. It then set out the following general rule:
>
>> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.... The notice must be of such nature as reasonable to convey the required information .... (I)f with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied....
>>
>> But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the

25

> absentee might reasonably adopt to accomplish it.
>
> Id. at 314-15, 70 S.Ct. at 657 (emphasis added).

64 Haw. at 10, 635 P.2d at 942.

The circuit court found and the parties do not dispute in these cases that Peppers, Del Rio, and Fisher were "the authorized attorney-in-fact for [International Fidelity]" and that they were "registered producers for [International Fidelity] in the State of Hawaii." We also note that HRS § 804-51 specifically provides that its provisions are made a part of every bail bond. The statute states that "[t]his section shall be considered to be set forth in full in words and figures in, and to form a part of, and to be included in, each and every bond or recognizance given in a criminal cause, whether actually set forth in the bond or recognizance, or not." HRS § 804-51. Under these circumstances, therefore, the notice that was provided to Peppers, Del Rio, and Fisher -- as required under HRS § 804-51 -- was reasonably calculated to apprise International Fidelity of the bail forfeiture judgments.

We further note that International Fidelity's reliance on Rosillo is misplaced. In that Minnesota case, the defendant failed to appear in court, a bail bond was forfeited, the defendant was arrested, the bail bond was reinstated, and bail was increased. 645 N.W.2d at 737. There was no notice about the bail forfeiture provided to either the bail bond company or the surety trust company that had issued the bail bond. Id. Thereafter, not being aware of what had occurred previously, the bail bond company and surety trust company authorized an additional bail bond for the defendant. The defendant then failed to appear for trial and both bonds were forfeited. Id. at 737-38. The Minnesota Court of Appeals ruled in these circumstances that the applicable court rule, which required notice to both appellants, had been violated and that the failure to provide notice to the appellants should have been considered in their motions to reinstate and discharge the bonds. Id. at

26

739. <u>Rosillo</u> is thus distinguishable from this case. Here, the required notice under § 804-51 was provided to Peppers, Del Rio, or Fisher.

Under the circumstances of the instant cases, we conclude that International Fidelity's due process rights were not violated.

## C. HRCP Rule 60(b) Is Not Applicable

International Fidelity contends that the circuit court erred by holding it was without authority to set aside the bail forfeiture judgments, asserting that the court should have granted relief to International Fidelity under HRCP Rule 60(b). International Fidelity contends that, pursuant to <u>State v. Camara</u>, 81 Hawai'i 324, 329 n.7, 916 P.2d 1225, 1230 n.7 (1996), bail forfeiture proceedings are civil proceedings, and therefore the circuit court had discretion to act pursuant to the HRCP.

The circuit court's relevant conclusions are set forth in COLs 1-3.[14] In COL 1, the circuit court correctly ruled that under HRCP Rule 81(a)(8),[15] the HRCP are not applicable to bail forfeiture proceedings. <u>See</u> <u>State v. Vaimili</u>, 131 Hawai'i 9, 13-14, 313 P.3d 698, 702-03 (2013); <u>Miles</u>, 135 Hawai'i at 529, 354

---

[14] COLs 1-3 state:

> 1. HRCP Rule 81(a)(8) provides that the HRCP are not applicable to proceedings for the forfeiture of bonds.
> 2. While Rule 81(h) permits the court to "direct that any one or more of these rules, not otherwise applicable to said proceeding pursuant to this Rule 81, shall be applicable to said proceeding," in the court's view, under the circumstances presented in these consolidated motions, application of the HRCP – and Rule 60(b) in particular – to the instant bond forfeiture proceedings would not further "the just, speedy, [or] inexpensive determination" of any of the cases. <u>See</u> HRCP Rule 1.
> 3. The court therefore declines to order the application of any of the HRCP to these consolidated proceedings.

[15] HRCP Rules 81(a)(8) provides that "[e]xcept as expressly otherwise provided in this Rule 81 or another rule of court, these rules shall not apply to . . . (8) [p]roceedings for the forfeiture of bonds under section 709-51, as the same may be renumbered[.]" "We note that HRS § 709-51, which is referenced in the rule, was renumbered as HRS § 804-51." <u>Miles</u>, 135 Hawai'i at 529 n.9, 354 P.3d at 182 n.9.

P.3d at 182. Further, the circuit court properly declined to act under HRCP Rule 81(h) to order any civil procedure rule, particularly HRCP Rule 60(b), applicable to the instant bail forfeiture proceedings.

International Fidelity contends that based on the State's failure to provide adequate notice to International Fidelity, the circuit court lacked jurisdiction to enter the bail forfeiture judgments against International Fidelity, the judgments are thus void, and "it is incumbent upon the court to use its inherent power under HRCP Rule 81(h) to authorize the application of HRCP Rule 60(b) to overturn" the bail forfeiture judgments.

First, we have rejected International Fidelity's contentions regarding the adequacy of notice in these cases. Second, pursuant to HRS § 804-51, there is no requirement to give notice to the surety *prior* to entry of a bail forfeiture judgment, but rather only *after* it has been entered. Thus, there is no question regarding the circuit court's jurisdiction to enter the bail forfeiture judgments in these cases. The circuit court properly declined to apply HRCP Rule 60(b) or any other civil procedure rule.

**D.  Form of the Bail Forfeiture Judgments**

International Fidelity contends that the circuit court erred by failing to enter a proper judgment pursuant to <u>Jenkins v. Cades Schutte Fleming & Wright</u>, 76 Hawai'i 115, 119, 869 P.2d 1334, 1338 (1994) and <u>State v. Diaz</u>, 128 Hawai'i 215, 286 P.3d 824 (2012).

International Fidelity contends that, because a bail forfeiture proceeding is a civil proceeding, the <u>Jenkins</u> rule applies requiring a separate judgment. However, in <u>Vaimili</u>, the Hawai'i Supreme Court rejected an argument that the requirements of <u>Jenkins</u> apply in bail forfeiture proceedings. 131 Hawai'i at 18-19, 313 P.3d at 707-08. Instead, the supreme court held that the requirements of HRS § 804-51 govern. <u>Id.</u> at 18, 313 P.3d at

707. Pursuant to HRS § 804-51, the circuit court is only required to enter a bail forfeiture judgment once, at the time the court forfeits the bond. Id. at 19, 313 P.3d at 708.

The bail forfeiture judgments entered in the instant eight cases were "judgments" consistent with HRS § 804-51. All of the judgments entered in the eight cases were entitled "Judgment and Order of Forfeiture of Bail Bond," and each ordered and decreed that the State had the right to recover the full amount forfeited under the bail bond from the principal and the surety, jointly and severally. This complies with the requirement of HRS § 804-51 that when the court forfeits any bail bond, "the court shall immediately enter up judgment in favor of the State and against the principal or principals and surety or sureties on the bond, jointly and severally, for the full amount of the penalty thereof[.]"

International Fidelity also contends that this court should remand the cases back to the circuit court for entry of conforming judgments pursuant to Diaz. However, as recognized by the supreme court in Vaimili, Diaz was a case of "peculiar circumstances" because in Diaz the original bail forfeiture judgment was not included in the record on appeal, therefore, the appellate court lacked jurisdiction over an initial appeal. 131 Hawai'i at 18-19, 313 P.3d at 707-08. Upon return of the case in Diaz to the circuit court, a second forfeiture judgment was entered given that the original judgment was not in the record. Id. at 19, 313 P.3d at 708; Diaz, 128 Hawai'i at 221, 286 P.3d at 830. As the court in Vaimili concluded,

> [n]othing in [Diaz] provides that a defendant or surety is entitled to a second final judgment that renders a second motion to set aside timely. Such a requirement would allow defendants and sureties to circumvent the thirty-day time limit in HRS § 804-51. The filing of a second final judgment in [Diaz] was the result of "the peculiar circumstances" of the case.

131 Hawai'i at 19, 313 P.3d at 708. Thus, Diaz is distinguishable from the instant cases. In each of the underlying eight cases, a bail forfeiture judgment was entered and is included in the

record on appeal.

## IV. Conclusion

For the foregoing reasons, the "Findings of Fact, Conclusions of Law, and Order Denying International Fidelity Insurance Company's Consolidated Motions to Set Aside Judgment Entered Against International Fidelity Insurance Company" filed on October 31, 2012, in the Circuit Court of the First Circuit, is affirmed.

On the briefs:

Matson Kelley
  and
Michael C. Carroll,
Sarah M. Love, (Bays Lung
Rose & Holma of counsel)
for Real Party in Interest-Appellant.

Brian R. Vincent,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.