**Electronically Filed
Supreme Court
SCWC-12-0001040
21-JUN-2017
08:09 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

SCWC-12-0001040
STATE OF HAWAI'I, Respondent/Plaintiff-Appellee, v.
SEMISI NELSON, Respondent/Defendant-Appellee, and
INTERNATIONAL FIDELITY INSURANCE COMPANY,
Petitioner/Real Party in Interest/Appellant.
(CAAP NO. 12-0001040; CR. NO. 05-1-2446)


AND


SCWC-12-0001041
STATE OF HAWAI'I, Respondent/Plaintiff-Appellee, v.
KAREN TERUYA, Respondent/Defendant-Appellee, and
INTERNATIONAL FIDELITY INSURANCE COMPANY,
Petitioner/Real Party in Interest/Appellant.
(CAAP NO. 12-0001041; CR. NO. 02-1-1718)


AND


SCWC-12-0001042
STATE OF HAWAI'I, Respondent/Plaintiff-Appellee, v.
CONRADO CABIGON, JR., Respondent/Defendant-Appellee, and
INTERNATIONAL FIDELITY INSURANCE COMPANY,
Petitioner/Real Party in Interest/Appellant.
(CAAP NO. 12-0001042; CR. NO. 08-1-1192)


AND

SCWC-12-0001043
STATE OF HAWAI'I, Respondent/Plaintiff-Appellee, v.
STEVE D. FERRARIS, Respondent/Defendant-Appellee, and
INTERNATIONAL FIDELITY INSURANCE COMPANY,
Petitioner/Real Party in Interest/Appellant.
(CAAP No. 12-0001043; CR. NO. 11-1-0306)

AND

SCWC-12-0001044
STATE OF HAWAI'I, Respondent/Plaintiff-Appellee, v.
DAVID K. BERRY, Respondent/Defendant-Appellee, and
INTERNATIONAL FIDELITY INSURANCE COMPANY,
Petitioner/Real Party in Interest/Appellant.
(CAAP NO. 12-0001044; CR. NO. 10-1-1289)

AND

SCWC-12-0001045
STATE OF HAWAI'I, Respondent/Plaintiff-Appellee, v.
JUSTIN NAKAMURA, Respondent/Defendant-Appellee, and
INTERNATIONAL FIDELITY INSURANCE COMPANY,
Petitioner/Real Party in Interest/Appellant.
(CAAP NO. 12-0001045; CR. NO. 09-1-1364)

AND

SCWC-12-0001046
STATE OF HAWAI'I, Respondent/Plaintiff-Appellee, v.
CEDRO MUNA, Respondent/Defendant-Appellee, and
INTERNATIONAL FIDELITY INSURANCE COMPANY,
Petitioner/Real Party in Interest/Appellant.
(CAAP NO. 12-0001046; CR. NO. 09-1-0616)

AND

SCWC-12-0001047
STATE OF HAWAI'I, Respondent/Plaintiff-Appellee, v.
JOHN PAUL LUNA, Respondent/Defendant-Appellee, and
INTERNATIONAL FIDELITY INSURANCE COMPANY,
Petitioner/Real Party in Interest/Appellant.
(CAAP NO. 12-0001047; CR. NO. 10-1-0621)

_____

SCWC-12-0001040

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS

JUNE 21, 2017

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, JJ., AND CIRCUIT COURT JUDGE NAKASONE, IN PLACE OF WILSON, J., RECUSED

OPINION OF THE COURT BY McKENNA, J.

## I.  Introduction

In eight separate criminal cases,[1] Real Party in Interest-Appellant/Petitioner, International Fidelity Insurance Company ("International Fidelity" or "International") had issued eight separate powers of attorney ("POA[s]") to either Ida Peppers ("Peppers") or Charles Fisher ("Fisher") to execute a bail bond on behalf of a defendant in each case.  In each criminal case, the bonded defendant failed to appear as required, and a Judgment and Order of Forfeiture of Bail Bond ("Judgment and Order of Forfeiture" or "forfeiture judgment") was entered in the Circuit Court of the First Circuit ("circuit court").

Within days of the entry of the forfeiture judgments, the court provided notice of those judgments to the surety listed on the bonds — either Peppers of Freedom Bail Bond ("FBB") or Fisher of AAA Local Bail Bonds ("AAA").  The court later issued letters to International Fidelity informing it of each Judgment

---

[1]  State v. Teruya, Cr. No. 02-1-1718; State v. Nelson, Cr. No. 05-1-2446; State v. Cabigon, Cr. No. 08-1-1192; State v. Muna, Cr. No. 09-1-0616; State v. Nakamura, Cr. No. 09-1-1364; State v. Luna, Cr. No. 10-1-0621; State v. Berry, Cr. No. 10-1-1289; State v. Ferraris, Cr. No. 11-1-0306.

3

and Order of Forfeiture and demanding payment. Over thirty days after International Fidelity received those letters – in fact, in each of the cases except in State v. Ferraris, Cr. No. 11-1-0306, it was several hundred days later — International Fidelity moved to set aside each of the forfeiture judgments, stating that it did not receive notice of the forfeiture judgments as required under HRS § 804-51 (2014).

Upon consolidating the motions, the circuit court denied them, concluding that the requirements of HRS § 804-51 were satisfied when notice of the forfeiture judgments had been issued to Peppers of FBB or Fisher of AAA. The court also ruled that International Fidelity nevertheless received notice of the forfeiture judgments when it had received the Judiciary's letters, and that International Fidelity's motions to set aside were untimely.

In a published opinion, the ICA affirmed the circuit court's "Findings of Fact, Conclusions of Law, and Order Denying International Fidelity Insurance Company's Consolidated Motions to Set Aside Judgment Entered Against International Fidelity Insurance Company" based on the circuit court's conclusion that due process and the requirements of HRS § 804-51 were satisfied when notice of the forfeiture judgments had been issued to Peppers or Fisher. The ICA did not address whether the State's letters to Fidelity Insurance satisfied the statute's notice

4

requirements. See State v. Nelson, 139 Hawai'i 147, 164 n.13, 384 P.3d 923, 940 n.13 (App. 2016).

International Fidelity timely filed an Application for a Writ of Certiorari ("Application") on December 23, 2016. For the following reasons, the ICA correctly determined that notice to International Fidelity of the forfeiture judgments was not required by due process or under HRS § 804-51. Specifically, HRS § 804-51 requires that notice be issued to the "surety on the bond," and the bonds at issue identify only FBB or AAA — and not International Fidelity — where the surety is required to be named pursuant to Criminal Administrative Order No. 2.1. Additionally, to the extent the forfeiture judgments may be ambiguous, we clarify that the forfeiture judgments were entered "against the . . . surety or sureties on the bond," i.e., Peppers of FBB or Fisher of AAA.

## II. Background

To provide context to the proceedings below, we begin with a general overview of the bail process and observations regarding the at-issue bail bonds and powers of attorney, before discussing the circuit court and ICA proceedings and decisions in this consolidated matter.

### A. Bail Process and Governing Laws

Bail, or the giving of bail, is "the signing of the recognizance by the defendant and the defendant's surety or

5

sureties, conditioned for the appearance of the defendant at the session of a court of competent jurisdiction to be named in the condition, and to abide by the judgment of the court."  HRS § 804-1 (2014).  The judge[2] admitting a defendant to bail has the discretion to set the amount of bail; in doing so, the judge considers both "the punishment to be inflicted on conviction, and the pecuniary circumstances of the party accused."  HRS § 804-9 (2014); Haw. Const. art I, § 12 ("Excessive bail shall not be required . . . .  The court may dispense with bail if reasonably satisfied that the defendant or witness will appear when directed, except for a defendant charged with an offense punishable by life imprisonment.").

1.  **Registering the Purchase of a Bail Bond from a Bail Bondsperson**

A person charged with a crime may purchase a bail bond from a professional bondsperson for five to fifteen[3] percent of the

---

[2]  Depending on the punishment for the offense charged, a judge, justice of a court of record, including a district judge, or a sheriff, sheriff's deputy, chief of police or any person named by the chief of police, "shall be competent to admit [an] accused to bail."  HRS § 804-5 (2014).

[3]              (a)  The amount of compensation which may be collected on any bail bond . . . by one or more persons acting as sureties thereon shall not exceed a one[-]time only fee from five to fifteen per cent of the amount thereof, but need not be less than $50 in any event; provided that additional fees, subject to subsection (b), may be collected for:
                 (1)  The posting of a surety insurance bond as defined in section 431:1-201(1);
                 (2)  The posting of a bond on behalf of a person whose case is pending appeal; or
                 (3)  The posting of a bond in which more than one
                                               (continued . . .)

total amount of bail set.  See Hawaii Crime Commission, <u>Study of Bail Forfeitures in Hawaii</u> 3 (1984) ("<u>Bail Study</u>").  Bail bondspersons who qualify as "sureties" are either self-funded[4] or are licensed insurance producers pursuant to HRS chapter 431, article 9A.  <u>See</u> HRS § 804-10.5(b)(2)-(3);[5] HRS § 431:9A-102

---

(. . . continued)

year has passed since the filing thereof.

(b)  The compensation collected pursuant to sections 804-62(a)(2) and (a)(3), in any year after the first year, may be collected annually, and:
(1)  Shall be charged on a prorated basis; and
(2)  Shall not exceed the percentage charged in the first year.

HRS § 804-62 (2014).

[4]  As a present practical matter, the percentage of bail bondspersons who are self-funded is likely minimal due to a 1987 change in the law regarding the deposit of security for bail bonds.  Prior to 1987, bail bondspersons could use the same security for multiple bonds.  See <u>Bail Study</u>, at 34 ("The current law is ambiguous as to the assets which should be maintained by a bondsman.  H.R.S. §804-10[\*] appears to require only that a bondsman have or be able to offer proof of assets totaling twice the face value of the individual bond posted.  No provision is made for an accumulation of assets to secure a large number of outstanding bonds.").  In 1987, the legislature clarified HRS chapter 804 to require a deposit of separate unencumbered property interests to secure each bail bond.  See 1987 Haw. Sess. Laws Act 139, § 9(3) at 315-16; HRS § 804-11.5(a),(f) (2014) ("Any person who is permitted to give bail . . . may secure the bail bond by a deposit . . . of [cash, credit or debit card authorization, or unencumbered interests in personal or real property] . . . .  For the purposes of this section, an unencumbered interest in real property, stocks, or bonds, <u>means that the interest is not encumbered by any lien or encumbrance or is not currently being used as security for a bail bond</u>." (emphasis added)).

\*  "No person shall be received as the surety for the appearance of the party accused, who does not own or possess property either real or personal within the State, to double the amount of the bail bond. . . ."  HRS § 804-10 (1985).

[5]  **Sureties; qualification.**  (a) In determining the sufficiency of a surety or sureties, the court shall consider the surety's or sureties':
(1) Character;
(2) Reliability;
(3) Place of residence; and
(4) Financial and employment circumstances.

(continued . . .)

("'Insurance producer' or 'producer' means a person required to be licensed under the laws of this State to sell, solicit, or negotiate insurance.").  Unlike self-funded bail bondspersons, bail bondspersons who are licensed insurance producers do not have to comply with single surety property requirements[6] or

---

(. . . continued)
            (b) No person shall be [a] sufficient surety who:
                (1) Has been convicted of perjury for submitting a
                    false statement under section 804.11-5;
                (2) Does not satisfy the requirements of section 804-
                    11.5; or
                (3) Does not satisfy the requirements of article 9A,
                    chapter 431, if posting an insurance bond as
                    defined in section 431:1-210(1).

HRS § 804-10.5 (2014).  In 2005, HRS § 804-10.5 (1993) was in effect, and is therefore applicable to the bond in Nelson, Cr. No. 05-1-2446.  As noted by the ICA, the textual difference between the 1993 and 2014 versions of HRS § 804-10.5 is limited to a reference to "article 9" instead of "article 9A." See Nelson, 139 Hawai'i at 163 n.11, 384 P.3d at 939 n.11.  In 2005, HRS chapter 431, article 9, concerned the licensing of insurance adjusters, independent bill reviewers, and limited service representatives.  For the purposes of the issues raised in this case, this does not alter the scheme for the qualification of sureties with respect to the Nelson bond.

            **Surety insurance defined.**  Surety insurance includes:
            (1)  Bail bond insurance, which is a guarantee that any
            person, in or in connection with any proceedings in any
            court, will:
                (A)  Attend in court when required, or
                (B)  Will obey the orders of judgment of the court,
                     as a condition to the release of the person from
                     confinement, and the execution of bail bonds for
                any such purpose.  The making of property or cash
                bail does not constitute the transacting of bail bond
                insurance.

HRS § 431:1-210(1) (2005).

[6]        **One surety sufficient; when.**  A single surety is
           sufficient, if the surety offers cash, a credit or debit
           card authorization, stocks, bonds, or real property in
           accordance with section 804-11.5; otherwise, there shall be
           two or more sureties.

HRS § 804-11 (2014).

deposit any security with the court[7] if their bonds are
guaranteed by a surety insurer. See HRS § 431:1-202 (2005)
("Insurer means every person engaged in the business of making
contracts of insurance and includes reciprocal or interinsurance
exchanges."); HRS § 431:1-210(1) (defining surety insurance);
supra note 5 (quoting text of HRS § 431:1-210(1)); HRS §
431:10F-101 (2005) (surety's requirements deemed met by surety
insurer);[8] Bail Study, at 32 (citing HRS § 431-636 (1976)
(predecessor of HRS § 431:10F-101)).

---

[7]    **Cash, credit and debit authorization, stocks,
       bonds, or real property as security for bail.** (a) Any
       person who is permitted to give bail in accordance with
       sections 804-7.4 may secure the bail bond by a deposit,
       with the clerk of the appropriate court, of:
           (1)  Cash or credit or debit card authorization equal
                to the amount of the bail;
           (2)  The unencumbered interest in personal property
                which as a marked value of not less than the
                amount of the bail bond; or
           (3)  Deeds for real property:
                (A)  Situated in this State;
                (B)  Not exempt from attachment of execution
                     under section 651-92;
                (C)  Owned by the person depositing the bail;
                     and
                (D)  Consisting of an unencumbered interest the
                     value of which is at least double the
                     amount of the bail bond.
       . . . .

HRS § 804-11.5 (2014).

[8]    **Requirements deemed met by surety insurer.** Whenever by
       law or by rule of any court, public official, or public
       body, a surety bond is required or is permitted to be
       given, provided the bond is otherwise proper and its
       conditions are guaranteed by an authorized surety insurer
       or by an unauthorized surety insurer pursuant to article 8,
       part II, the bond shall be approved and accepted and shall
       be deemed to fulfill all requirements as to number of
       sureties, residence or status of sureties, and other
       similar requirements, and no justification by the surety

(continued . . .)

"[T]he bonds[person] does not actually post the bail with the court, but merely registers the bond purchase." Bail Study, at 32. From July 1, 2002 through June 9, 2010, Criminal Administrative Order No. 2.1 was in effect and outlined procedures for registering or filing bail bonds. Requirements included: (1) "[e]ach and every bail bond shall conform to the 'Sample Standard Form for Bail Bonds' attached to this order"; (2) "[i]ndividuals and/or entities issuing bail bonds shall be responsible for ensuring that all information appearing on a bond is correct"; and (3) "[e]ach and every bail bond shall have attached to it a power of attorney indicating the insurance company that is insuring the bond." See Crim. Admin. Order No. 2.1 at D-17A.

After Criminal Administrative Order No. 2.1 was rescinded on June 9, 2010, there were no court rules or orders regarding bail until July 1, 2011, when HRPP Rule 46(b) took effect.[9]

---

(. . . continued)
        shall be necessary. For the purpose of this section,
        surety bond shall also include a recognizance, obligation,
        stipulation or undertaking.

HRS § 431:10F-101 (2014).

[9] HRPP Rule 46(b) (2011) states:

        **(b) Bond.**
            A party seeking release on bail by posting bond shall
        submit the bond in a form that substantially complies with
        Form J annexed to these rules. If a bail bond is secured
        by insurance, a copy of the bail agent's power of attorney
        shall be attached to the bond, and shall be supported by
        the affidavit or declaration of the bail agent authorized
                                            (continued . . .)

### 2. Bond Forfeiture Provisions

By statute, the following language is deemed to be set forth in each and every bond or recognizance, whether actually set forth in the bond or recognizance, or not:

> Whenever the court, in any criminal cause, forfeits any bond or recognizance given in a criminal cause, the court shall immediately enter up judgment in favor of the State and against the principal or principals and surety or sureties on the bond, jointly and severally, for the full amount of the penalty thereof, and shall cause execution to issue thereon immediately after the expiration of thirty days from the date that notice is given via personal service or certified mail, return receipt requested, to the surety or sureties on the bond, of the entry of the judgment in favor of the State, unless before the expiration of thirty days from the date that notice is given to the surety or sureties on the bond of the entry of the judgment in favor of the State, a motion or application of the principal or principals, surety or sureties, or any of them, showing good cause why execution should not issue upon the judgment, is filed with the court. If the motion or application, after a hearing held thereon, is sustained, the court shall vacate the judgment of forfeiture and, if the principal surrenders or is surrendered pursuant to section 804-14 or section 804-41, return the bond or recognizance to the principal or surety, whoever shall have given it, less the amount of any cost, as established at the hearing, incurred by the State as a result of the nonappearance of the principal or other event on the basis of which the court forfeited the bond or recognizance. If the motion or application, after a hearing held thereon, is overruled, execution shall forthwith issue and shall not be stayed unless the order overruling the motion or application is appealed from as in the case of a final judgment.

HRS § 804-51 (emphases added); id. ("This section shall be considered to be set forth in full in words and figures in, and

---

(. . . continued)
> to furnish bail for compensation. The declaration or affidavit shall identify the insurer, provide the agent's and insurer's license numbers, attest the agent and the insurer are currently licensed and in good standing with the Insurance Commissioner of the State of Hawai'i, and attest the agent and the insurer are in compliance with Hawai'i law governing bail bonds.

to form a part of, and to be included in, each and every bond or recognizance given in a criminal cause, whether actually set forth in the bond or recognizance, or not.").

## B. Bail Bonds Filed in Cr. Nos. 02-1-1718, 05-1-2446, 08-1-1192, 09-1-0616, 09-1-1364, 10-1-0621, 10-1-1289, and 11-1-0306

Except for the bail bond issued in State v. Ferraris, Cr. No. 11-1-0306, each of the remaining seven bonds were issued between October 27, 2005 and June 2, 2010, and were therefore required to conform with the "Sample Standard Form for Bail Bonds" attached to Criminal Administrative Order No. 2.1, as that order was in effect from 2002 until June 9, 2010.  The bond in Ferraris was issued on March 8, 2011, after Criminal Administrative Order No. 2.1 was rescinded, but before HRPP Rule 46 was amended to provide procedures for the posting of bail bonds.  In any event, the Ferraris bond appears to also conform to the "Sample Standard Form for Bail Bonds" attached to Criminal Administrative Order No. 2.1.

The "Sample Standard Form for Bail Bonds" requires that the surety be identified at the top of the bail bond, together with the surety's address and telephone number.  Pursuant to that requirement, the surety listed on seven bail bonds is "Ida Peppers, Freedom Bail Bond," where the bonds were signed by either Peppers or Linda Del Rio ("Del Rio").  The surety listed on the remaining bail bond is "AAA Local Bail Bonds, Charles

12

Fisher General Agent," and signed by Fisher. International Fidelity is not identified on any of the bail bonds.

Instead, International Fidelity had issued the POAs that were attached to each of the bail bonds. Each of the POAs consisted of a pre-printed form that was filled in and signed by an "executing agent" or "atty in fact." The pre-printed forms for each of the POAs were identical except for that used in State v. Nelson, Cr. No. 05-1-2446. The seven identical pre-printed forms read as follows:

> KNOW ALL MEN BY THESE PRESENTS, that INTERNATIONAL FIDELITY INSURANCE COMPANY, a corporation duly organized and existing under the laws of the State of New Jersey, has constituted and appointed, and does hereby constitute and appoint, [sic] its true and lawful Attorney-in-Fact, with full power and authority to sign the company's name and affix its corporate seal to, and deliver on its behalf as surety, any and all obligations as herein provided, and the execution of such obligations in pursuance of these presents shall be as binding upon the company as fully and to all intents and purposes as if done by the regularly elected officers of said company at its home office in their own proper person; and the said company hereby ratifies and confirms all and whatsoever its said Attorney-in-Fact may lawfully do and perform in the premises by virtue of these presents. THIS POWER OF ATTORNEY IS VOID IF ALTERED OR ERASED, THE OBLIGATION OF THE COMPANY SHALL NOT EXCEED THE SUM OF [    ] THOUSAND . . . AND MAY BE EXECUTED FOR RECOGNIZANCE ON CRIMINAL BAIL BONDS ONLY. . . . Authority of such Attorney-in-Fact is limited to the execution of appearance bonds and cannot be construed to guarantee defendant's future lawful conduct, adherence to travel limitation, fines, restitution, payments or penalties, or any other condition imposed by a court not specifically related to court appearances. A separate Power of Attorney must be attached to each bond executed.

The POA in Nelson reads:

> KNOW ALL MEN BY THESE PRESENTS, that INTERNATIONAL FIDELITY INSURANCE CORPORATION, a corporation duly organized and existing under the laws of the State of New Jersey has

13

constituted an appointed, and does hereby constitute and appoint, [sic[10]] its true and lawful attorney-in-fact, with full power and authority to sign the company's name and affix its corporate seal to, and deliver on its behalf as surety, any and all obligations as herein provided, and the execution of such obligations in pursuance of these presents shall be as binding upon the company as fully and to all intents and purposes as if done by the regularly elected officers of said company at its home office in their own proper person; and the said company hereby ratifies and confirms all and whatsoever its said attorney-in-fact may lawfully do and perform in the premises by virtue of these presents. THIS POWER OF ATTORNEY IS VOID IF ALTERED OR ERASED, THE OBLIGATION OF THE COMPANY SHALL NOT EXCEED THE SUM OF THIRTY THOUSAND DOLLARS ($30,000.00) AND MAY BE EXECUTED FOR RECOGNIZANCE ON CRIMINAL BAIL BONDS ONLY. . . . The authority of such attorney-in-fact is limited to appearance bonds and cannot be construed to guarantee for failure to provide payments, back alimony payments, fines or wage law claims.

Based on the contracts Peppers and Fisher (through Bryan Nester ("Nester"), partner of AAA) had with International Fidelity, Peppers and Fisher were required to send immediate notice to International of any forfeitures declared on any bonds written by them that were guaranteed by International. Specifically, Peppers's contract stated: "The Retailer [Peppers] will send, immediately, notice to the Company [International] of any forfeitures declared on any bonds written by him, since such may affect the Company." Similarly, Nester's contract stated: "The Producer [Nester and any subproducers, including Fisher] will send immediately, notice to International of any defaults,

---

[10] There was a space provided in the text for the insertion of the appointee's name, but it was left blank. The same error appears in the other POAs, except there was no "blank space" for the insertion of a name. Regardless, none of the parties challenge the effectiveness of the POA.

14

forfeitures, or breaches declared on any bonds written by or on behalf of Producer."

## C.     Licenses of Bail Bondspersons and International Fidelity

The circuit court found that at all times relevant, Peppers, Del Rio, and Fisher were registered producers for [International Fidelity] in the State of Hawaii. Indeed, the record contains the licensure certificates for both Peppers and Del Rio, which were issued by the Insurance Division of the Department of Commerce and Consumer Affairs ("DCCA"). The certificates identify Peppers and Del Rio as "resident producers" of surety insurance. Although the record does not contain a copy of Fisher's license, it was represented in a court brief that at the time of the subject bail transaction, Fisher was "an appointed and authorized bail bond agent in the State of Hawaii under the company AAA Local Bail Bonds."[11] A "bail agent" is a type of insurance producer. See HRS § 431:9N-101 (Supp. 2016).

The circuit court made no specific finding, however, as to International Fidelity's license status. International Fidelity had consistently represented to the circuit court that it was a "duly licensed and authorized surety in the state of Hawaii,"

---

[11] A review of the DCCA's insurance license database confirms that both Charles R. Fisher and AAA Local Bail Bonds were each at one time licensed as a "resident producer" of surety insurance. See http://insurance.ehawaii.gov/hils/info/301946/203113 (Charles R. Fisher); http://insurance.ehawaii.gov/hils/info/300930/201841 (AAA Local Bail Bonds).

but did not specify whether it was a licensed insurance producer governed by HRS chapter 431, article 9A.

## D.  Circuit Court Proceedings

### 1.  Issuance of Judgments and Orders of Forfeiture

In each of the eight criminal cases, the defendant failed to appear before the court when required.  The bail bond posted on behalf of each defendant was therefore forfeited, and the circuit court entered a Judgment and Order of Forfeiture in each case.  The language used in each forfeiture judgment was similar, and substantially took one of the following two forms, with relevant language underlined.  The first form was used in Nelson, Teruya, Cabigon, and Nakamura:

> The above-entitled case having come . . . before the . . . Judge of the above-entitled court, on [said date], and the Defendant having failed to appear or to be present on the said date, and the Court, upon motion of the State of Hawaii, having on said date ordered and declared the forfeiture of the bail bond filed and posted in this case, executed by said Defendant, as principal, and INTERNATIONAL FIDELITY INSURANCE COMPANY (FREEDOM BAIL BOND), through its agent and attorney in fact, IDA PEPPERS, as surety, in the sum of . . . ,
>
> NOW, THEREFORE, pursuant to the foregoing order, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the State of Hawaii does have and recovers from the principal and the surety above named, jointly and severally, the sum of . . . , and that execution issue herein according to law.

The second form was used in Ferraris, Muna, Berry (where "this cause" is stated instead of "this case"), and Luna (where "Charles Fisher" is stated instead of "Ida Peppers (Freedom Bail Bond)"):

> The above-entitled case having come . . . before the . . . Judge of the above-entitled court, on [said date],

16

> and the Defendant having failed to appear or to be present on the said date, and the Court, upon motion of the State of Hawai['li, having on said date ordered and declared the forfeiture of the bail bond filed and posted in this case, <u>executed by said Defendant, as principal, and INTERNATIONAL FIDELITY INSURANCE COMPANY, through its agent and attorney in fact, IDA PEPPERS (FREEDOM BAIL BOND), as surety, in the sum of . . . ,</u>
>> NOW, THEREFORE, pursuant to the foregoing order, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the State of Hawai['li does have and recovers from the principal and the surety above named, jointly and severally, the sum of . . . , and that execution issue herein according to law.

In most of the cases, either FBB or AAA filed a motion to set aside the forfeiture judgments within thirty days of receiving notice of the judgments.[12]  The motions were typically continued to allow the bond companies more time to locate the defendants. Ultimately, none of the judgments were set aside.

### 2. Letters Sent to International Fidelity Subsequent to Entry of Judgments and Orders of Forfeiture and International Fidelity's Motions to Set Aside

Subsequent to the entry of Judgments and Orders of Forfeiture and any continuances that may have been granted to FBB or AAA to locate defendants, letters were sent by the Judiciary to International Fidelity by certified mail, return receipt requested.  Each letter's subject line read, "Re: Notification of Bail Bond Forfeiture," and stated (or used similar language):

---

[12]  A review of the record reveals that FBB did not file motions to set aside in State v. Nakamura, Cr. No. 09-1-1364, and State v. Ferraris, Cr. No. 11-1-0306.  FBB filed an untimely motion to set aside in State v. Berry, Cr. No. 10-1-1289.

> To Whom It May Concern:
>
> Pursuant to Section 804-51, Hawaii Revised Statutes, judgment has been entered on [date of relevant Judgment and Order of Forfeiture] that bail of [relevant amount] be forfeited in the following matter:
>
> Case Number: [relevant case number]
> Case Name: [relevant case name]
> Name of Issuing General Agent: [Freedom Bail Bond or AAA Local Bail Bonds]
> Policy No.: [relevant "power number" imprinted on Power of Attorney]
>
> Our records indicate that payment is due and owing. If payment is not immediately received, appropriate legal action will be taken, including but not limited to requesting the appropriate Court to determine sufficiency of the surety and/or referring the matter to the State of Hawaii's Department of the Attorney General to commence collection actions.  If you have any questions, please contact the Cashier's Office . . . .

International Fidelity filed Motions to Set Aside in each case beyond thirty days from the date it received each of the Judiciary's letters.  Specifically, in each case except Ferraris, International Fidelity's motions were filed several hundred days — approximately one to three years — after the respective letters regarding the Judgment and Order of Forfeiture were sent.

### 3.    Consolidated Motions and Circuit Court's Disposition

Upon International Fidelity's motion, International's Motions to Set Aside filed in the eight criminal cases were consolidated before the Hon. Richard K. Perkins in the Circuit Court of the First Circuit.  International Fidelity asserted similar arguments in each case.  Namely, that International Fidelity was the "surety of record" according to the POAs

18

attached to the registered bail bonds, and that it did not receive "[the] statutorily required notice of the entry of a judgment and order of forfeiture of bail bond as required under HRS § 804-51" in any of the cases. Accordingly, it sought to set aside the Judgments and Orders of Forfeiture "as against International" because the circuit court "lacked jurisdiction over International when each of the judgments was entered" due to the court's failure to provide International with the requisite notice. International Fidelity also argued that it would otherwise be deprived of "its rights under HRS § 804-51 and to due process." Further, according to International Fidelity, the notice that issued to either Peppers/FBB or Fisher/AAA did not constitute notice to it, and the letters it received from the State were "payment demands" that did not satisfy the notice requirements under HRS § 804-51. Lastly, International argued that good cause existed to set aside the forfeiture judgments in at least five of the cases — Berry, Muna, Ferraris, Luna, and Nakamura — as the defendants had been apprehended and returned to State custody "within months" from when the Judiciary issued its letters.

The circuit court disagreed with International Fidelity's assertions. Instead, it determined that International Fidelity was not entitled to notice pursuant to HRS § 804-51, and that because International's consolidated motions were filed outside

the time limit imposed by HRS § 804-51, the court was "without the power to consider them." (citing State v. Ranger Ins. Co., 83 Hawaiʻi 118, 124 n.5, 925 P.2d 288, 294 n.5 (1996)).

In arriving at its disposition, the circuit court first analyzed the text and legislative history of HRS § 804-51 to determine whether International Fidelity was entitled to notice pursuant to that statute. Relying on a Senate Judiciary Standing Committee Report that defined "bail bondsman" as "the surety [referred to] in Chapter 804, Hawaii Revised Statutes,"[13] the court concluded "the legislature intended the term 'surety,' as used in the notice provisions of HRS § 804-51, to apply to bondspersons such as Pepper and Del Rio of FBB and Fisher of AAA." Because the notice requirements of HRS § 804-51 were satisfied when notice was given to FBB or AAA, absent the filing of a motion or application showing good cause within the thirty-day period following receipt of notice by FBB or AAA, International Fidelity was "subject[] . . . to execution on the bond."

_____

[13] The purpose of this bill is to change the present law by requiring that the courts give a written notice to the bail bondsman (referred to as the surety in Chapter 804, Hawaii Revised Statutes) upon forfeiture of any bail bond. A bail bond is forfeited when a criminal defendant fails to appear for a scheduled court appearance. This bill would also allow a bail bondsman thirty days, instead of the present ten, to object to any forfeiture of a bail bond.

(citing S. Stand. Comm. Rep. No. 857, in 1989 Senate Journal, at 1127 (emphasis added)).

The circuit court noted that HRS § 804-51 "requires nothing more than notice to the surety 'of the entry of the judgment in favor of the State.'" Thus, for the sake of argument, the court concluded that even if the Judiciary was required to provide notice directly to International Fidelity, it did so by way of its mailed letters. Those letters were not "attempts to execute on the judgments," but rather were "meant only to notify [International] of the entry of the forfeiture judgments, to demand payment, and to warn [International] of the possibility of further legal action." Thus, "[t]o date, none of the judgments at issue in this proceeding have been executed upon."

Based on the foregoing, the circuit court denied International Fidelity's consolidated Motions to Set Aside Judgment Entered Against International Fidelity Insurance Company.

**B. Appeal to the ICA**

International Fidelity timely appealed the circuit court's denial of its motions, and the ICA consolidated those appeals under CAAP-12-1040. International reiterated its arguments that the forfeiture judgments should be set aside because it did not receive notice of the judgments as required by HRS § 804-51, and was therefore deprived of the opportunity to timely locate the defendants and an opportunity to be heard that is protected under procedural due process.

21

The ICA chose to "not adopt either party's position, but rather agree[d] with the circuit court to the extent it held that the term 'surety' in HRS § 804-51 refers to the bondspersons (or bail agents) in these cases . . . ."  Nelson, 139 Hawai'i at 160, 384 P.3d at 935.  In addition to elaborating on the same legislative history behind the notice requirement that had been highlighted by the circuit court, the ICA carefully examined multiple provisions of both HRS chapters 804 (governing bail) and 431 (governing insurance) to ensure that its interpretation of HRS § 804-51 was consistent with all statutory provisions.  See 139 Hawai'i at 160–63, 384 P.3d at 936–39.

In sum, the ICA explained that it was uncontested that Peppers, Del Rio, and Fisher were "insurance producers" governed by HRS chapter 431, article 9A.  As "insurance producers," they qualified as sureties under HRS § 804-10.5.  Moreover, they had signed the bond; HRS § 804-1 requires the surety or sureties to do so.  The ICA also pointed out that the definition of "bail agent" set forth in HRS § 431:9N-101 (Supp. 2015), describes the distinct roles of a licensed "insurance producer under article 9A" and an authorized "surety insurer."  See Nelson, 139 Hawai'i at 162–63, 384 P.3d at 938–39; HRS § 431:9N-101 (Supp. 2015) ("As used in this article: 'Bail agent' means a licensed insurance producer under article 9A who is appointed by an

authorized surety insurer, furnishes bail for compensation in any court in this State, and has the power of attorney to execute or countersign bail bonds in connection with judicial proceedings.").

The ICA went on to explain that International Fidelity's due process rights were not violated because "the notice that was provided to Peppers . . . and Fisher -- as required under HRS § 804-51 -- was reasonably calculated to apprise International Fidelity of the bail forfeiture judgments" in accordance with Klinger v. Kepano, 64 Haw. 4, 635 P.2d 938 (1981). Nelson, 139 Hawaiʻi at 165, 384 P.3d at 941. Additionally, the ICA ruled that the form of the forfeiture judgments was proper, and that the circuit court "properly declined to apply HRCP Rule 60(b) or any other civil procedure rule." 139 Hawaiʻi at 166, 384 P.3d at 942.

For these reasons, the ICA affirmed the circuit court's October 31, 2012, "Findings of Fact, Conclusions of Law, and Order Denying International Fidelity Insurance Company's Consolidated Motions to Set Aside Judgment Entered Against International Fidelity Insurance Company." Id.

C.   **Application for Writ of Certiorari**

International Fidelity timely applied for a writ of certiorari in each of the eight underlying criminal cases. This

23

court consolidated those applications under SCWC-12-1040.  The

following two questions were raised in its Application:

> 1.  Whether the ICA made grave errors of law in holding that Hawai'i Revised Statutes § 804-51, the bail forfeiture statute, did not require the State to give a surety notice of bail forfeiture judgments before holding the surety liable, thereby depriving the surety of the 30-day search period or right to show good cause to set aside the judgments under the statute.
>
> 2.  Whether the ICA made grave errors of law in holding that the failure to provide notice or an opportunity to be heard to a surety did not violate the surety's rights to procedural due process where the surety did not receive any notice or an opportunity to be heard to contest the judgment.

International Fidelity argues that the ICA erred in its

interpretation of HRS § 804-51, as the statute is unambiguous

and should be plainly read.  According to International, the

forfeiture judgments "clearly identify International as the

surety, not the Bondspersons," and other jurisdictions require

that the state provide notice of the judgments to the surety

instead of the bondsperson.  International appears to also

suggest that only entities that "provide surety insurance for

bail bonds" can act as a "surety" in Hawai'i.  Because a bail

bondsperson or bail agent is only authorized to "sell, solicit

or negotiate surety insurance," he or she cannot act as a

"surety" as contemplated by Hawai'i law.  Moreover, International

Fidelity posits: "[i]f [the ICA's interpretation of HRS § 804-

51] is correct, the judgment is only enforceable against the

Bondspersons as the sureties, and not International.  The ICA

24

failed to explain how the judgment could then be enforced against International without notice, apparently as a second surety on the bonds." International asks that if the ICA's interpretation of HRS § 804-51 is upheld, the "judgments should be deemed void as against International and only enforceable against the Bondspersons."

International Fidelity also asserts the ICA erred in determining that its due process rights were not violated. The issuance of notice to the bail bondspersons does not amount to notice to International as: (1) the bail bondspersons were merely "special agents" of International and therefore notice provided to the bondspersons "cannot be imputed to [International]," (2) other jurisdictions would require notice to International as a matter of due process.

### III. Standard of Review

"Interpretation of a statute is a question of law which [is] review[ed] de novo." Kikuchi v. Brown, 110 Hawai'i 204, 207, 130 P.3d 1069, 1072 (App. 2006) (internal quotation marks and citation omitted).

### IV. Discussion

The crux of International Fidelity's Application is that it is a "surety" as that term is used in HRS chapter 804, and was therefore entitled to notice of the forfeiture judgments pursuant to HRS § 804-51. However, International wholly fails

to engage with the ICA's careful analysis regarding that court's interpretation of the term "surety," which is in accord with other provisions of HRS chapters 804 and 431.  Instead, International Fidelity repeatedly asserts that because it is a surety insurer, and because its POAs refer to it as the "surety," it is a "surety" as that term is used in HRS § 804-51.  These assertions lack any statutory basis.

The following analysis underscores the correctness of the ICA's decision.

## A.  International Fidelity Fails to Demonstrate That It Qualifies As a Surety under HRS § 804-10.5

Hawai'i law contemplates two types of sureties: property-based and insurance-based.  A surety on a bail bond must secure the bail bond by a deposit with the court clerk of personal or real property.[14]  If the surety is licensed by the insurance commission as an "insurance producer,"[15] the surety may instead post an insurance bond.  See HRS § 804-10.5.[16]  Based on a plain reading of this statute, any person, including a bail

---

[14]  If depositing cash, credit or debit card authorization, or other personal property, the market value of which must not be less than the amount of the bail.  See HRS § 804-11.5(a).  If depositing deeds of real property, the market value of the unencumbered interest of which must be at least twice the amount of the bail.  See id.

[15]  Or, with respect to the 2005 bond issued in Nelson, as an "adjuster, independent bill reviewer, or limited service representative."  See HRS § 804-10.5 (1993); supra note 5.

[16]  See supra note 6 (quoted text).

bondsperson or bail agent, can qualify as a "surety" so long as either of these requirements is met.

It is undisputed that no property was deposited with the court clerk as security for bail in any of the criminal cases at issue here.  Thus, each bail bond was secured by an "insurance bond" that was posted by an "insurance producer," such as Peppers or Fisher.  In other words, a defendant, or others on behalf of the defendant, purchased from Peppers or Fisher a bail bond that was guaranteed by an insurance policy issued from International Fidelity.

International Fidelity asserts that it posted the bail bonds directly with the court (through Peppers, Del Rio, or Fisher as its attorney-in-fact), and therefore was the "surety" on the bonds, as stated in the POAs.  However, International fails to explain how it qualifies as a surety under HRS § 804-10.5.  Indeed, as noted supra Part II.C., the circuit court did not find, nor did International Fidelity represent, that it is a licensed "insurance producer" authorized to sell insurance in Hawai'i.  International Fidelity cannot satisfy the requirement by adopting the licensure status of Peppers, Del Rio, or Fisher, as they served as International's attorneys-in-fact, and not the other way around.  Moreover, nothing in HRS § 431:10F-101 (2014) (deeming many surety requirements fulfilled so long as the surety bond is guaranteed by a surety insurer), abrogates the

27

ongoing requirement that insurance be sold only by those properly licensed.  Accordingly, to qualify as a surety on a bail bond, given that it is not licensed to sell insurance in Hawai‘i, International Fidelity would have been required to deposit the requisite personal or real property with the court clerk pursuant to HRS § 804-10.5(b)(2), which it did not do.

**B.    The "Surety on the Bond" Was Either Peppers of FBB or Fisher of AAA**

International Fidelity argues that the ICA and the circuit court failed to construe HRS § 804-51 by its plain meaning, but rather supplanted a key term, "surety," with "bail bondsperson," based on legislative history.  As the ICA pointed out, however, further support beyond legislative history is provided by the representations made on the face of the bail bonds.

For example, the ICA noted that the signatures of Peppers or Del Rio of FBB, or Fisher of AAA, were present on the bonds, which included language requiring the defendant to comply with the court's conditions.  See Nelson, 139 Hawai‘i at 162, 384 P.3d at 938.  The bonds do not contain a signature or seal of International Fidelity, and the signatures of Peppers, Del Rio, and Fisher do not indicate they had signed on behalf of International Fidelity.  These facts support the conclusion that Peppers or Del Rio of FBB or Fisher of AAA were the sureties as HRS § 804-1 requires the signature of "a defendant's surety or

28

sureties" on a recognizance that the defendant would comply with applicable conditions.

Further, at the time the subject bail bonds were issued, Criminal Administrative Order No. 2.1 was in effect.[17] This order required that all bail bonds follow the "Sample Standard Form for Bail Bonds." The Standard Form provided that the "Name of Surety" be identified in two separate places on the bond, and that the address and telephone number of the named surety be listed at the top of the form. Additionally, Criminal Administrative Order No. 2.1 stated that those issuing bail bonds were "responsible for ensuring that all information appearing on a bond is correct."

The surety named on the bond is critical to applying HRS § 804-51, as the statute requires that when a bond is forfeited, "the court shall immediately enter up judgment in favor of the State and against the principal or principals and surety or sureties on the bond," and notice be "given via personal service or certified mail, return receipt requested, to the surety or sureties on the bond, of the entry of the judgment in favor of the State." HRS § 804-51. As noted supra Part II.B., a comparison of each of the bail bonds in this matter show that they conform to the Sample Standard Form for Bail Bonds, and

_____

[17] Criminal Administrative Order No. 2.1 applies except to the bond in Ferraris, CR. No. 11-1-0306. See supra Part II.B.

that the "Name of Surety" identified on the bail bond was either "Ida Peppers, Freedom Bail Bond," or "AAA Local Bail Bonds, Charles Fisher General Agent." Accordingly, the "surety or sureties on the bond" was either Peppers or Fisher, not International Fidelity.

Thus, a plain language interpretation or strict construction of HRS § 804-51 leads to the same conclusion: that the statute required that judgment be entered against, and notice be given to, Peppers or Fisher, and not to International Fidelity. Based on the foregoing, see Parts IV.A.-B., International Fidelity's reliance on the surety law of other jurisdictions is misplaced.

## C. International Fidelity's Rights to Due Process Were Not Violated

International presents two arguments as to why it was entitled, in accord with due process, to receive notice from the court of the forfeitures. First, International states that the ICA incorrectly concluded "that notice can be imputed" to International because "the Bondspersons were authorized attorneys-in-fact and registered producers for International." Second, International cites to two foreign cases to support its contention that a surety has a due process right to receive notice of the forfeiture.

As to the first argument, International misunderstands the ICA's decision. At no time did the ICA state that "notice [to the bail bondspersons] can be imputed" to International because of some kind of agency relationship. Rather, the ICA pointed out that by statute, the text of HRS § 804-51 is included in the provisions of each bail bond issued in Hawai'i. See Nelson, 139 Hawai'i at 164-65, 384 P.3d at 940-41. As such, when International executed the surety bonds that secured the bail bonds (through its limited attorneys-in-fact and registered producers), it was well aware that notice of forfeiture would be given to the "surety on the bond" pursuant to HRS § 804-51, i.e., to Peppers or Fisher. The ICA concluded: "[u]nder these circumstances, therefore, the notice that was provided to Peppers, Del Rio, and Fisher -- as required under HRS § 804-51 -- was reasonably calculated to apprise International Fidelity of the bail forfeiture judgments." See 139 Hawai'i at 165, 384 P.3d at 941.

For its second argument, International Fidelity relies on State v. Rosillo, 645 N.W.2d 735, 739 (Minn. Ct. App. 2002), and asserts that the ICA "did not correctly distinguish" the case. International argues that "[t]he fact that notice was not provided to either the surety or the bondsperson was not material to the Court's holding because the rights to due process extends to both the surety and the bondsperson."

International Fidelity fails to explain, however, why the due process right described in <u>Rosillo</u> — which flows from Minnesota Rules of General Practice Rule 702(e) ("Whenever a bail bond is forfeited by a judge, the surety and bondsman shall be notified by the court administrator in writing.") — should have effect in Hawai'i, when the laws of this state require that notice issue only to the "surety or sureties on the bond."  HRS § 804-51.

International's reliance on <u>People v. Wilshire Ins. Co.</u>, 46 Cal. App. 3d 216, 119 Cal. Rptr. 917 (Cal. Ct. App. 1975), and other California caselaw, is similarly misplaced.  California's bail statute is quite dissimilar from Hawaii's bail statutes, as it "explicitly requires the clerk to mail notice of any declared forfeiture to the principal office of the corporate surety and to the bail agent who posted the bond."  46 Cal. App. 3d at 220, 119 Cal. Rptr. at 919 (citing Cal. Penal Code § 1305).  Hawai'i has no such explicit requirement.  In any event, even under Cal. Penal Code § 1305, which requires notice to issue to the corporate surety only if "the bond plainly displays [its] mailing address," notice to International would not be required as International's name and mailing address were not "plainly display[ed]" on any of the bail bonds.

## D.    **International Fidelity's Liability for the Judgment**

International Fidelity briefly presents two arguments as to why the forfeiture judgments are not enforceable against it.

32

First, International Fidelity interprets the forfeiture judgments to have been entered against it, and argues that if HRS § 804-51 does not require that it be issued notice, then the entry of judgment against it violates due process. Alternatively, if Peppers or Fisher are the "sureties on the bond" who received notice and against whom judgment was issued, then the forfeiture judgments are enforceable only against Peppers or Fisher and should be "deemed void as against International [as a second surety]" because International was not given adequate notice.

As to International Fidelity's first argument, International is mistaken regarding against which party judgment was entered.  The "surety on the bond" to whom notice was issued regarding the forfeiture judgments is the same "surety on the bond" against whom judgment was entered pursuant to HRS § 804-51, namely, Peppers or Fisher.

Again, the statute states:

> Whenever the court, in any criminal cause, forfeits any bond or recognizance given in a criminal cause, the court shall immediately enter up judgment in favor of the State and against the principal or principals and <u>surety or sureties on the bond</u>, jointly and severally, for the full amount of the penalty thereof, and shall cause execution to issue thereon immediately after the expiration of thirty days from the date that notice is given via personal service or certified mail, return receipt requested, <u>to the surety or sureties on the bond</u>, of the entry of the judgment in favor of the State . . . .

33

HRS § 804-51 (emphasis added).  With minor exceptions,[18] the language used in the forfeiture judgments in <u>Nelson</u>, <u>Teruya</u>, <u>Cabigon</u>, and <u>Nakamura</u> was as follows:

> The above-entitled case having come . . . before the . . . Judge of the above-entitled court, on [said date], and the Defendant having failed to appear or to be present on the said date, and the Court, upon motion of the State of Hawaii, having on said date ordered and declared the forfeiture of the bail bond filed and posted in this case, <u>executed by said Defendant, as principal, and INTERNATIONAL FIDELITY INSURANCE COMPANY (FREEDOM BAIL BOND), through its agent and attorney in fact, IDA PEPPERS, as surety, in the sum of . . .</u> ,
> NOW, THEREFORE, pursuant to the foregoing order, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the State of Hawaii does have and recovers from the principal and the surety above named, jointly and severally, the sum of . . . , and that execution issue herein according to law.

(Emphasis added.)  The language used in <u>Ferraris</u>, <u>Berry</u>, <u>Muna</u>, and <u>Luna</u> was:

> The above-entitled case having come . . . before the . . . Judge of the above-entitled court, on [said date], and the Defendant having failed to appear or to be present on the said date, and the Court, upon motion of the State of Hawai[']i, having on said date ordered and declared the forfeiture of the bail bond filed and posted in this case, <u>executed by said Defendant, as principal, and INTERNATIONAL FIDELITY INSURANCE COMPANY, through its agent and attorney in fact, IDA PEPPERS (FREEDOM BAIL BOND), as surety, in the sum of . . .</u> ,
> NOW, THEREFORE, pursuant to the foregoing order, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the State of Hawai[']i does have and recovers from the principal and the surety above named, jointly and severally, the sum of . . . , and that execution issue herein according to law.

(Emphasis added.)[19]

---

[18]  The <u>Teruya</u> judgment did not indicate the date of the defendant's required appearance.

[19]  As previously noted, the <u>Berry</u> judgment used "this cause" instead of "this case," and the judgment issued in <u>Luna</u> was directed at "Charles Fisher" instead of "Ida Peppers (Freedom Bail Bond)."

It is perhaps unclear from the text of the judgments whether International, instead of Peppers or Fisher, was identified as the "surety" against which the judgments were entered. "As surety" can be interpreted to modify "International Fidelity Insurance Company" despite the long intervening clause. Alternatively, "as surety" might be viewed to modify the preceding noun, "Ida Peppers," "Ida Peppers (Freedom Bail Bond)," or "Charles Fisher," as the case may be.

"The general rule is that, like any other written instrument, a court order must 'be construed reasonably and as a whole so as to give effect to the intention of the court.'" Wohlschlegel v. Uhlmann-Kihei, Inc., 4 Haw. App. 123, 130, 662 P.2d 505, 511 (1983) (citing Smith v. Smith, 56 Haw. 295, 301, 535 P.2d 1109, 1114 (1975)). "'Moreover, we must give effect not only to that which is expressed but also to that which is unavoidably and necessarily implied by the judgment or decree.'" Id. (quoting Ahuna v. Dep't of Hawaiian Home Lands, 64 Haw. 327, 333-34, 640 P.2d 1161, 1166 (1982)). Applying these rules of interpretation, we construe the forfeiture judgments as having been entered in compliance with HRS § 804-51, i.e., entered against the defendant and either Peppers or Fisher, whomever was the "surety on the bond."

International asserts in its alternative argument that nothing in HRS § 804-51 permits the judgment to be enforced

against it "as a second surety on the bonds" because it failed to receive notice of the judgments.  International therefore concludes that "the judgments should be deemed void against International and only enforceable against the Bondspersons."

As a preliminary matter, International does not provide support for its assertion that it failed to receive notice of the judgments, which, in any event, is not supported by the record.  The circuit court had concluded that International Fidelity "independently received notice from the Judiciary of the forfeiture judgment in each of these cases" through the Judiciary's letters to International.  On certiorari to this court, International did not contest the ICA's decision to decline "reach[ing] International Fidelity's challenge to the circuit court's alternative holding, that the letters sent by the Judiciary to International Fidelity were sufficient notice [to International]," Nelson, 139 Hawai'i at 164 n.13, 384 P.3d at 940 n.13, and otherwise failed to assert the circuit court's underlying findings of fact and conclusions of law were error. Thus, these findings of fact[20] and conclusions of law remain intact.

---

[20]  Such findings include: (1) each letter issued by the Judiciary to International had indicated that it was a "Notification of Bail Bond Forfeiture," stated that "judgment has been entered," and provided "the date of the judgment and the amount forfeited, the case name and number, the name of the issuing general agent, and the policy number matching the power of attorney attached to the bail bond," and (2) the letters included a demand for payment, however, none of the judgments had been executed upon.

Moreover, as discussed supra Part IV.C., based on the statutorily mandated incorporation of the text of HRS § 804-51 into each bail bond, International was well aware that notice of forfeiture would be given to the "surety on the bond," i.e., to Peppers or Fisher, and therefore the notice that was provided to Peppers or Fisher was reasonably calculated to apprise International Fidelity of the bail forfeiture judgments.

In sum, International received notice of the forfeiture judgments by the foregoing means and cannot now evade its obligations as the issuer (through licensed insurance producers, such as Peppers or Fisher) of the surety bonds that secured the defendants' bail bonds. In other words, the defendants' bail bonds were guaranteed by International Fidelity's contracts to insure. The forfeiture judgments, therefore, have effect as to International, the surety insurer, insofar as the judgments may support any payment demands or causes of action the State may have against International.

## V. Conclusion

For the foregoing reasons, we affirm the ICA's October 26, 2016 Judgment on Appeal, filed pursuant to its September 29, 2016 opinion, affirming the Circuit Court of the First Circuit's October 31, 2012 "Findings of Fact, Conclusions of Law, and Order Denying International Fidelity Insurance Company's

37

Consolidated Motions to Set Aside Judgment Entered Against

International Fidelity Insurance Company."

| | |
|---|---|
| Matson Kelley and<br>Michael C. Carroll<br>for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Brian R. Vincent<br>for respondent | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| | /s/ Karen T. Nakasone |

